**James C. RAYNER**

v.

**Daniel W. SMIRL, et al.**

**Civ. No. JFM–88–578.**

United States District Court,
D. Maryland.

June 16, 1988.

K.J. Mackley, Mackley, Gilbert, and Marks, Hagerstown, Md., and Charles G. Bernstein, Bernstein, Sakellaris and Ward, Baltimore, Md., for plaintiff.

H. Russell Smouse, Melnicove, Kaufman, Weiner, Smouse and Garbis, P.A., Baltimore, Md., for defendants.

## OPINION

MOTZ, District Judge.

Plaintiff, James C. Rayner, initially instituted this action in the Circuit Court for Baltimore City, asserting a claim for wrongful discharge under Maryland law. Defendants, CSX Corporation and Daniel W. Smirl (a CSX supervisor), removed the action to this Court on the ground that plaintiff has, in substance, asserted a claim under the Federal Railroad Safety Act of 1970 ("FRSA"), 45 U.S.C. Sections 421–44 (1982 & Supp. I 1983).[1] Defendants have now moved to dismiss or for summary judgment on the ground that plaintiff has not filed a claim with the Railroad Adjustment Board as required by Section 441(e) of the FRSA.

### I.

The facts as alleged by plaintiff may be briefly stated. In December 1967 plaintiff was hired by the predecessor of CSX as a locomotive fireman. By April 1979, after several promotions, plaintiff had become a road foreman of engines. As such, he became an employee at will. On numerous occasions dating back to 1984, plaintiff learned of or observed what he perceived to be serious violations of established train operating rules and regulations on the railroad. He reported these violations to his superiors but they consistently rebuked him for his "whistle-blowing" and admonished him that one must "get along with the people with whom one works." As a result of his complaints, plaintiff became quite unpopular with his supervisors and various retaliatory actions were taken against him. Eventually, he was terminated as a road foreman and was assigned to Newcastle, Pennsylvania, and then to Youngstown, Ohio where he is employed as an engineer. These assignments have caused great hardship to plaintiff because he and his family have for many years lived and established ties in Hagerstown, Maryland.

### II.

Defendants contend that the FRSA provides a remedy for the wrongs alleged by plaintiff and that plaintiff's tort claim for wrongful discharge is therefore, as a matter of state law, preempted. *See Chekey v. BTR Realty, Inc.*, 575 F.Supp. 715, 717–18 (D.Md.1983).[2] There is, however, a related but separate issue which this Court must decide before determining whether it can reach the state law preemption question and which (if answered affirmatively) moots the state law question. This case was removed to this Court from the Circuit Court for Baltimore City. It was removable only if the FRSA is "so completely" preemptive that it converts plaintiff's wrongful discharge claim under state law into an action arising under federal law. *See Metropolitan Life Insurance Co. v. Taylor,* —— U.S. ——, 107 S.Ct. 1542, 1546–47, 95 L.Ed.2d 55 (1987). Thus, the inquiry which must be made is whether, as a matter of federal preemption law, the FRSA provides an exclusive remedy to plaintiff for his whistleblowing activities.[3]

---

1. In his original complaint plaintiff named CSX Corporation, not CSX Transportation, Inc., as a party defendant. It is undisputed that CSX Transportation, Inc. is plaintiff's employer, and plaintiff is hereby given leave to amend his complaint to substitute CSX Transportation, Inc. for CSX Corporation as a defendant.

2. Defendants also assert, as a secondary position, that, assuming no preemption, plaintiff has failed to state a wrongful discharge claim because (1) he has not been discharged from his employment with CSX, and (2) he has not alleged that he reported any safety violations outside the intra-corporate group. *See Adler v. American Standard Corp.*, 830 F.2d 1303, 1306 (4th Cir.1987). This Court need not reach these issues in light of its holding that plaintiff's wrongful discharge claim is federally preempted.

3. Defendant contends that a reference made by plaintiff in the complaint to the Vietnam Era Veterans' Readjustment Assistance Act of 1974, 38 U.S.C. Section 2011 (1982 & Supp. II 1984), constituted the assertion of a claim under federal law which provides a sufficient basis for removal. Quite obviously, plaintiff was not attempting to state a claim under VEVRAA since, as defendants have argued in their motion to dismiss, VEVRAA applies only to procurement contracts of at least $10,000 with the United States. Furthermore, plaintiff has now amended his complaint to drop any reference to VEVRAA and withdrawing any claim which might have been associated with it. In light of this

It must first be determined, of course, whether the FRSA provides a remedy to plaintiff at all. 45 U.S.C. Section 441(a) (1982) provides as follows:

A common carrier by railroad engaged in interstate or foreign commerce may not discharge or in any manner discriminate against any employee because such employee, whether acting in his own behalf or in a representative capacity, has—

(1) filed any complaint or instituted or caused to be instituted any proceeding under or related to the enforcement of the Federal railroad safety laws; or

(2) testified or is about to testify in any such proceeding.

■ The question here presented is whether plaintiff's intra-corporate violation reports constitute the filing of complaints within the meaning of Section 441(a).[4] Legislative history provides no specific guidance on this question. However, the general background of Section 441(a) is succinctly stated in the report of the House Committee on Interstate and Foreign Commerce:

The Committee has been informed of many complaints over the years of harassment in situations where a worker notifies authorities of violations, testifies in safety proceedings or institutes an action against a railroad. According to these complaints, harassment includes, but is not limited to, firing, verbal abuse, disproportionate dangerous assignments, and constant and unrelenting supervision. Such retaliatory actions by employers are not to be tolerated in the work place. Section 10 of the bill [45 U.S.C. § 441 (1982)] provides protection for the rail worker under these circumstances. The legislation would forbid discrimination against an employee for, among other things, reporting such violations. Similarly, the legislation would forbid a railroad from discriminating against an employee who refused to work in hazardous conditions presenting an imminent danger of death or serious injury. The Committee strongly believes employees should not be forced to choose between their lives and their livelihoods.

H.R.Rep. No. 1025, 96th Cong., 2d Sess. [hereinafter House Rep.] 8, *reprinted in* 1980 U.S. Code Cong. & Admin. News 3830, 3832.

This statement strongly suggests a legislative intent that the section be read broadly in order to accomplish the purposes of the FRSA. As the allegations made by plaintiff in this very case demonstrate, a distinction between intra-corporate complaints and complaints made to outside officials would be an entirely artificial one. In either situation employees "should not"—in the language of the House Committee on Interstate and Foreign Commerce—"be forced to choose between their lives and their livelihoods." Moreover, the second problem described in the House Committee Report which is addressed by Section 441(b)—forbidding a railroad from discriminating against an employee who refuses to work under hazardous conditions—clearly relates to an intra-workplace environment. There is no reason to infer that Congress intended to prevent an employee from being forced to work in peril but not to confer upon him a remedy for complaining to his supervisors about safety conditions.

■ To conclude that Section 441(a) confers a remedy upon an employee who files

---

amendment, even if the original complaint had provided a basis for removal, this Court would exercise its discretion to remand the case to the Circuit Court for Baltimore City if it was not finding (as it does) that the Federal Railroad Safety Act is preemptive. *See Carnegie–Mellon University v. Cohill,* — U.S. —, 108 S.Ct. 614, 622, 98 L.Ed.2d 720 (1988).

4. Plaintiff also argues that he is not an "employee" within the meaning of Section 441(a). Plaintiff bases this argument upon the fact that under the Railway Labor Act he was a supervisory employee and therefore unprotected by that Act. However, the FRSA is separate and distinct from the Railway Labor Act; it merely borrows the RLA's administrative complaint procedure. The Occupational Safety and Health Act provides a closer analog to the FRSA, and OSHA defines "employee" as "an employee of an employer who is employed in a business of his employer which affects commerce." 29 U.S.C. Section 652(6) (1982). There is no reason not to construe the term "employee" as used in the FRSA just as broadly, in light of the remedial purpose of the Act.

intra-corporate reports does not dictate the further conclusion that this remedy is an exclusive one. The recognition of a state wrongful discharge claim for reporting safety violations, complementary to the federal administrative remedy, would not create an "outright or actual conflict between federal and state law," make compliance with both laws "in effect physically impossible" or construct "an obstacle to the accomplishment and execution of the full objectives of Congress." *See Louisiana Public Service Commission v. FCC,* 476 U.S. 355, 368–69, 106 S.Ct. 1890, 1898–99, 90 L.Ed.2d 369 (1986) (citations omitted). Indeed, it could be argued that the existence of a state claim would further the federal interest in railroad safety beyond the administrative remedy provided by federal law.[5] Speculation is not required as to the Congressional intent, however. 45 U.S.C. Section 434 (1982) is conclusive on the point. It provides as follows:

> The Congress declares that laws, rules, regulations, orders, and standards relating to railroad safety shall be nationally uniform to the extent practicable. A State may adopt or continue in force any law, rule, regulation, order, or standard relating to railroad safety until such time as the Secretary [of Transportation] has adopted a rule, regulation, order, or standard covering the subject matter of such State requirement. A State may adopt or continue in force an additional or more stringent law, rule, regulation, order, or standard relating to railroad safety when necessary to eliminate or reduce an essentially local safety hazard, and when not incompatible with any Federal law, rule, regulation, order, or standard, and

when not creating an undue burden on interstate commerce.

This language could not be more clear that the laws relating to national safety shall be "nationally uniform to the extent practicable." This language "expresses a clear intent to preempt state law," and it is therefore controlling under established principles governing federal preemption. *See Louisiana Public Service Commission v. FCC, supra,* at 368–69, 106 S.Ct. at 1898–99; *Hillsborough County v. Automated Medical Laboratories, Inc.,* 471 U.S. 707, 713, 105 S.Ct. 2371, 2375, 85 L.Ed. 2d 714 (1985).[6]

It might be argued that Section 434 should not be deemed to apply here because the reason for the uniformity which it imposes is to prevent inconsistent safety *standards* from state to state. However, by its terms this section does not apply simply to safety standards but to all "laws, rules, regulations, [and] orders ... relating to railroad safety." That Section 441(a) is, within the contemplation of Congress, a "law relating to railroad safety" is established by its placement in the chapter of 45 U.S.C. entitled "Railroad Safety." Furthermore, to the extent that Section 434 is intended not to be comprehensive, it is expressly limited, and neither of the two exceptions which it contains—one relating to State requirements preexisting the enactment of Section 434 and the other to "essentially local" safety hazards—is applicable here. *See Missouri Pacific Railroad Co. v. Railroad Commission,* 833 F.2d 570, 573 (5th Cir.1987).

In summary, this Court finds that Section 441(a) of the FRSA does confer a rem-

---

**5.** 45 U.S.C. Section 441(d) (1982) provides that, "[w]henever an employee of a railroad is afforded protection under this section and under any other provision of law in connection with the same allegedly unlawful act of an employer, if such employee seeks protection he must elect either to seek relief pursuant to this section or pursuant to such other provision of law." It might be argued that this section implies that a plaintiff may elect to bring a state common law action rather than assert his rights under Section 441. However, the legislative history makes clear that this provision was included only to assure that Section 441 did not displace the protections and remedies already accorded

to many railroad employees under the Railway Labor Act. *See* House Rep. at 16, *reprinted in* 1980 U.S. Code Cong. & Admin. News, at 3840.

**6.** The express preemption language of Section 434 distinguishes the FRSA from the Atomic Energy Act and therefore makes plaintiff's reliance upon *Wheeler v. Caterpillar Tractor Co.,* 108 Ill.2d 502, 92 Ill.Dec. 561, 485 N.E.2d 372 (1985), *cert. denied* 475 U.S. 1122, 106 S.Ct. 1641, 90 L.Ed.2d 187 (1986), and *Stokes v. Bechtel North American Power Corp.,* 614 F.Supp. 732 (N.D.Cal.1985), misplaced.

edy to a railroad employee, such as plaintiff, who allegedly has been subjected to adverse employment actions for making intra-corporate reports of safety violations. Further, the Court finds that, in light of the express language of Section 443, this remedy preempts, as a matter of federal law, any state remedy and that, therefore, in light of Congress's pervasive legislation in the field, this action was properly removed to this Court from the Circuit Court for Baltimore City.[7] Accordingly, because it is undisputed that plaintiff has not filed a claim with the Railroad Adjustment Board as required by Section 441(c), this Court is without jurisdiction, and defendants' motion to dismiss is granted. A separate order to that effect is being entered herewith.

---

7. This Court is also of the view that, as a matter of state law, the existence of the remedy provided by Section 441(a) preempts plaintiff's wrongful discharge claim. *See Chekey v. BTR Realty, Inc., supra,* at 717–18. However, as indicated in the text above, this Court has no jurisdiction to decide that question unless the state law claim is federally preempted, and its finding that it has jurisdiction moots the question.