**James C. RAYNER, Plaintiff–Appellant,**

v.

**Daniel W. SMIRL; CSX Corporation, Defendants–Appellees.**

No. 88–3130.

United States Court of Appeals, Fourth Circuit.

Argued Jan. 11, 1989.

Decided April 21, 1989.

Kenneth J. Mackley (Mackley, Gilbert & Marks, Hagerstown, Md., Charles Gerald Bernstein, Baltimore, Md., Bernstein, Sakellaris & Ward, on brief) for plaintiff-appellant.

H. Russell Smouse (Kenneth D. Pack, Melnicove, Kaufman, Weiner, Smouse & Garbis, P.A., Baltimore, Md., on brief) for defendants-appellees.

Before ERVIN, Chief Judge, and MURNAGHAN and WILKINSON, Circuit Judges.

WILKINSON, Circuit Judge:

The question here is whether the Federal Railroad Safety Act of 1970, 84 Stat. 971, as amended, 45 U.S.C. § 421–44, preempts a Maryland action for the wrongful discharge of a railroad employee who reports railroad safety violations of his employer. We hold that the federal "whistleblower" statute, 45 U.S.C. § 441, and the comprehensive remedial provisions incorporated therein, 45 U.S.C. §§ 441(c) & 153, are the railroad employee's exclusive remedy and therefore preempt his state-law claim. We affirm the judgment of the district court dismissing the employee's state action without prejudice to any federal remedies available to him.

I.

James C. Rayner has worked for CSX Corporation and its predecessor corporations since December of 1967. He served CSX for twelve years as a locomotive fireman and locomotive engineer. In April of 1979, he was promoted to the position of road foreman of engines and was assigned to the Baltimore area. Although he became an at-will employee of CSX by virtue of this promotion, he retained his seniority rights as a former union member.

Between 1984 and 1987, Rayner alleges that he observed several safety violations and reported them to his superiors at CSX. He asserts in his complaint that he was known as a "whistleblower" who refused to overlook serious rules infractions, and was told by his superiors that he should learn to "get along" with the people around him.

In 1987, Rayner was removed from his position as a road foreman. He now works for CSX as a locomotive engineer in Youngstown, Ohio. He alleges that CSX removed and reassigned him in retaliation for safety complaints about the operation of the railroad.

In January of 1988, Rayner filed suit in the Circuit Court for Baltimore City against CSX Corporation and Daniel W. Smirl, one of his supervisors, asserting a wrongful discharge action under Maryland law. Defendants removed the action to federal district court, claiming that Rayner's state claim was preempted by the

Federal Railroad Safety Act (FRSA), 45 U.S.C. §§ 421–44. Defendants subsequently moved to dismiss Rayner's complaint, asserting, *inter alia*, that Rayner's sole means of redress was a complaint to the National Railroad Adjustment Board pursuant to 45 U.S.C. §§ 441(c) & 153.

The district court found that Rayner's state claim for wrongful discharge was preempted by the FRSA and therefore properly removed to federal court. The district court granted defendants' motion to dismiss because Rayner failed to pursue the administrative remedies required by § 441. The action was dismissed without prejudice in order to allow Rayner to pursue the federal remedies available to him. *See Rayner v. Smirl*, 687 F.Supp. 993 (D.Md.1988).

Rayner appeals.

## II.

■ We must first review briefly the basic principles of jurisdiction as they pertain to the federal preemption of state law. Absent diversity of citizenship, the jurisdiction of the federal district courts is governed by the "well-pleaded complaint" rule. *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63, 107 S.Ct. 1542, 1546, 95 L.Ed.2d 55 (1987). Federal jurisdiction, in other words, "exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 107 S.Ct. 2425, 2429, 96 L.Ed.2d 318 (1987), *citing Gully v. First Nat. Bank*, 299 U.S. 109, 112–13, 57 S.Ct. 96, 97–98, 81 L.Ed. 70 (1936). The plaintiff generally may avoid federal jurisdiction by relying exclusively on state law; the defendant generally cannot invoke federal jurisdiction by relying on the defense of federal preemption. *Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 7–12, 103 S.Ct. 2841, 2845–48, 77 L.Ed.2d 420 (1983).

■ The "complete preemption" doctrine is, however, an exception to the well-pleaded complaint rule. *Id.* at 22–24, 103 S.Ct. at 2852–54. Once an area of state law has been completely preempted, "any claim purportedly based on that preempted state law is considered, from its inception, a federal claim, and therefore arises under federal law." *Caterpillar*, 107 S.Ct. at 2430. If the FRSA provides Rayner an exclusive remedy, his state claim for wrongful discharge is preempted and removal was appropriate.

## III.

■ Appellant argues that the Federal Railroad Safety Act does not provide him a remedy and therefore has no preemptive effect. We disagree.

Amendments to the FRSA in 1980 afforded explicit protection to "whistleblowers." *See* Federal Railroad Safety Authorization Act of 1980, Pub.L. 96–423, § 10, 94 Stat. 1815 (1980) (codified at 45 U.S.C. § 441). The Act now provides that:

> A common carrier by railroad engaged in interstate or foreign commerce may not discharge or in any manner discriminate against any employee because such employee, whether acting in his own behalf or in a representative capacity, has—
>
> (1) filed any complaint or instituted or caused to be instituted any proceeding under or related to the enforcement of the Federal railroad safety laws; or
>
> (2) testified or is about to testify in any such proceeding.

45 U.S.C. § 441(a).

■ Rayner argues first that § 441(a) does not speak to intra-corporate complaints and therefore does not provide him a remedy. We reject such a narrow construction of this federal remedial provision. At the time of its passage in 1970, the FRSA was the "most comprehensive" rail safety legislation ever enacted by Congress. *See* H.R.Rep. No. 91–1194, 91st Cong., 2d Sess., *reprinted in* 1970 U.S. Code Cong. & Admin.News 4104, 4106. As with all safety legislation, the Act should be broadly construed to effectuate the congressional purpose. *See Whirlpool Corp. v. Marshall*, 445 U.S. 1, 13, 100 S.Ct. 883, 891, 63 L.Ed.2d 154 (1980).

More specifically, § 441 of the FRSA was meant to protect railroad employees who are harassed, discriminated against, or discharged by their employers for reporting safety violations. *See* H.R.Rep. No. 96–1025, 96th Cong., 2d Sess., *reprinted in* 1980 U.S.Code Cong. & Admin.News 3830, 3840. Such "retaliatory actions by employers [were] not to be tolerated in the work place." *Id.*, 1980 U.S.Code Cong. & Admin. News at 3832. Railroad employees would no longer "be forced to choose between their lives and their livelihoods." *Id.* In short, it was Congress' intent to protect all railroad employees who report safety violations. The distinction between intra-corporate complaints and those made to outside agencies is therefore an "artificial" one. *Rayner*, 687 F.Supp. at 995. Both serve to promote rail safety and both are within the contemplation of § 441.

We also reject Rayner's contention that he is not an "employee" within the meaning of § 441(a) and is therefore without a federal remedy under the FRSA. All disputes arising under § 441 must be brought before the National Railroad Adjustment Board pursuant to the administrative procedures of the Railway Labor Act. *See* 45 U.S.C. §§ 441(c) & 153. The fact that Rayner was a railroad supervisor does not mean that the Board is without jurisdiction in his case. Rayner in fact misconstrues the relationship between the FRSA and the Railway Labor Act. The FRSA's incorporation of the RLA in § 441 is limited to the RLA's dispute resolution procedures. 45 U.S.C. § 441(c). The FRSA borrows the administrative complaint procedures of the National Railroad Adjustment Board, but not its definition of employee or necessarily its jurisdictional limitations. Congress intended the FRSA to promote the safety of *all* those working in the national rail system. A more inclusive definition of employee is therefore warranted. *See e.g.*, 29 U.S.C. § 652(6) ("employee" defined under the Occupational Safety and Health Act). *See also Rayner*, 687 F.Supp. at 995 n. 4.

Neither the language nor the legislative history of § 441 distinguishes at-will employees such as Rayner from those work-ing under collective bargaining agreements. It would, moreover, be anomalous to impute to Congress an intent to distinguish between these two categories of employees, each of which may allege the same retaliatory employer action for the same protected act. We thus decline to hold that an at-will employee is somehow not an employee under the Act. Section 441(c) plainly states that: "*Any* dispute, grievance, or claim arising under [§ 441] *shall* be subject to resolution in accordance with the procedures set forth in section 153 of this title." 45 U.S.C. § 441(c)(1) (emphasis added). The Railroad Adjustment Board has exclusive jurisdiction over disputes arising under § 441, *Boston & Maine Corp. v. Lenfest*, 799 F.2d 795, 800 (1st Cir.1986). It possesses the expertise on matters of railway safety and the capacity to protect Rayner's rights. We again construe the Act based on Congress' remedial intent and conclude that Rayner is an "employee" within the contemplation of § 441(a).

In sum, we hold that § 441 provides a broad federal remedy for railroad "whistle-blowers." We refuse to narrow this federal remedial provision to allow appellant to pursue a state action in tort.

### IV.

We next must determine whether Congress intended the federal remedy in § 441 to supersede state law in cases such as the present one. *See Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 67 S.Ct. 1146, 91 L.Ed. 1447 (1947). We conclude that it did.

The Supremacy Clause, U.S. Const. art. VI, cl. 2, is the source of Congress' power to preempt state law. *See Louisiana Public Service Comm'n v. FCC*, 476 U.S. 355, 368, 106 S.Ct. 1890, 1898, 90 L.Ed. 2d 369 (1986). Whether a state cause of action is preempted in a particular case is a question of congressional intent. *Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 208, 105 S.Ct. 1904, 1909, 85 L.Ed.2d 206 (1985). Congress' purpose is the "ultimate touchstone." *Malone v. White Motor Corp.*, 435 U.S. 497, 504, 98 S.Ct. 1185, 1190, 55 L.Ed.2d 443 (1978).

Congressional intent in the FRSA is clear. The statute includes an explicit preemption provision in which Congress declared that:

> laws, rules, regulations, orders, and standards relating to railroad safety shall be nationally uniform to the extent practicable. A State may adopt or continue in force any law, rule, regulation, order, or standard relating to railroad safety until such time as the Secretary [of Transportation] has adopted a rule, regulation, order, or standard covering the subject matter of such State requirement. A State may adopt or continue in force an additional or more stringent law, rule, regulation, order, or standard relating to railroad safety when necessary to eliminate or reduce an essentially local safety hazard, and when not incompatible with any Federal law, rule, regulation, order, or standard, and when not creating an undue burden on interstate commerce.

45 U.S.C. § 434. The legislative history also emphasizes that railroad safety is better served by uniform federal action rather than "by subjecting the national rail system to a variety of enforcement in 50 different judicial and administrative systems." See H.R.Rep. No. 91–1194, 91st Cong., 2d Sess., *reprinted in* 1970 U.S.Code Cong. & Admin.News 4104, 4109. Railroad safety is therefore to be "nationally uniform to the extent practicable." 45 U.S.C. § 434. *See also Donelon v. New Orleans Terminal Co.*, 474 F.2d 1108, 1112 (5th Cir.1973).

Section 441 clearly is a law "relating to railroad safety" under § 434. It therefore has preemptive force in the instant case. The purpose of the Act is to reduce injuries to persons and damage to property caused by railroad accidents. *See* 45 U.S.C. § 421. *See also* H.R.Rep. No. 91–1194, 91st Cong. 2d Sess., *reprinted in* 1970 U.S.Code Cong. & Admin.News 4104, 4113. Section 441 furthers these goals by protecting railroad employees who report safety violations. Moreover, § 441 was enacted after the FRSA preemption provision. Congress therefore was aware of the FRSA's preemptive scope when § 441 was added to the FRSA. Finally, Congress presumably believed that this statutory "whistleblow-er" provision was a law "relating to railroad safety" when it included it in the Federal Railroad Safety Authorization Act of 1980 and codified it in the United States Code under the title of "Railroad Safety." *See* Pub.L. 96–423, § 10, 94 Stat. 1815 (1980) (codified at 45 U.S.C. § 441). *See also* H.R.Rep. No. 96–1025, 96th Cong., 2d Sess., *reprinted in* 1980 U.S.Code Cong. & Admin.News 3830, 3830–33; *Rayner*, 687 F.Supp. at 996.

The comprehensive remedial scheme for aggrieved railroad employees provided in § 441 serves to confirm its preemptive scope. The parties may petition for a hearing before the National Railroad Adjustment Board and may be represented by counsel. An employee who prevails before the Board may seek enforcement of the Board's order in the federal district courts, and either party may petition the federal district courts for review of the Board's decisions. *See generally* 45 U.S.C. § 153. The specific remedies for wrongfully discharged workers are also set forth. The Board may award backpay to aggrieved railroad employees and may order employers to reinstate discharged or demoted employees to their previous positions. *See* 45 U.S.C. § 441(c)(2). This specific remedial scheme illustrates a congressional intent that the FRSA remedy for railroad "whistleblowers" be exclusive. *Cf. Pilot Life v. Dedeaux*, 481 U.S. 41, 52–56, 107 S.Ct. 1549, 1555–57, 95 L.Ed.2d 39 (1987). Neither the text nor the legislative history of § 441 indicates any desire by Congress to authorize remedies not included in the statute. The statute does not authorize the punitive damages that accompany many state tort recoveries, for example. The " 'presumption that a remedy was deliberately omitted from a statute is strongest when Congress has enacted a comprehensive legislative scheme including an integrated system of procedures for enforcement.' " *Id.* at 1556, *quoting Massachusetts Mutual Life Ins. Co. v. Russell*, 473 U.S. 134, 147, 105 S.Ct. 3085, 3092, 87 L.Ed. 2d 96 (1985).

We also agree with the district court that the preemptive effect of § 434 is

not limited to certain state safety *standards* as appellant contends. *Rayner*, 687 F.Supp. at 996. The FRSA preempts not just safety standards but many categories of potential state action. By its terms, the FRSA preemption provision applies to "laws, rules, regulations, orders, *and* standards relating to railroad safety." 45 U.S. C. § 434 (emphasis added).

In addition, Congress' desire for national uniformity in railroad safety practices clearly is implicated by Rayner's common law claims. In one sense, of course, all the trier of fact need do in a wrongful discharge action is determine the reason for the discharge. In another sense, however, Rayner's claim of wrongful discharge for "whistleblowing" is inextricably tied to the question of precisely what railroad safety practices he was blowing the whistle on. To the extent that the justifiable nature of the whistleblowing enters the calculus in wrongful discharge actions, railroad safety laws might be subject to an unpredictable medley of jury determinations, which Congress, in its quest for national uniformity under § 434, sought to avoid.

In short, appellant's state claim is not saved from federal preemption merely because it sounds in tort. Other provisions of federal law which sound in tort, such as the Federal Employers' Liability Act, 45 U.S.C. § 51, also implicate railroad safety and possess their own preemptive effect. *See Lancaster v. Norfolk & Western Ry.*, 773 F.2d 807, 812 (7th Cir.1985).[1]

### V.

Although the preemption provision in § 434 of the FRSA recognizes two exceptions, neither saves Rayner's state claim from preemption.

■ Under § 434, states generally remain free to address matters of railroad safety until preempted by federal action. *See also* H.R.Rep. No. 91–1194, 91st Cong., 2d Sess., *reprinted in* 1970 U.S.Code Cong. & Admin.News 4104, 4109. Once the federal government acts, however, the FRSA normally preempts state regulation of that subject matter. *See National Ass'n of Regulatory Utilities Comm'rs v. Coleman*, 542 F.2d 11, 13 (3d Cir.1976) (§ 434 evinces a "total preemptive intent" in those areas where the federal government has acted). In the present context, Congress has acted to protect railroad "whistleblowers" by statute. *See* 45 U.S.C. § 441. Appellant's state claim therefore does not qualify for the first statutory exception to FRSA preemption.

■ Rayner's action for wrongful discharge also is not saved by the second statutory exception to FRSA preemption which provides the states concurrent power to regulate railroad safety under certain conditions. In order to qualify for this exception, the state action must be necessary to eliminate or reduce an "essentially local safety hazard"; cannot be incompatible with any federal measure; and must not unduly burden interstate commerce. *See* 45 U.S.C. § 434. *See also* H.R.Rep. No. 91–1194, 91st Cong., 2d Sess., *reprinted in* 1970 U.S.Code Cong. & Admin.News 4104, 4117. Congress intended to allow states to respond to local situations which do not lend themselves to national uniformity. The Maryland wrongful discharge action, however, is not designed to remedy an "essentially local" safety hazard, is incompatible with the detailed remedial scheme in § 153, and largely duplicates the federal "whistleblower" remedy provided in § 441. The second statutory exception to FRSA preemption therefore does not apply. *See Coleman*, 542 F.2d at 14–15.

---

1. Appellant contends that § 441(d) grants him a choice of remedies and therefore permits him to pursue a state common law action for wrongful discharge. Congress' intent in enacting § 441, however, was simply to preserve existing protections and remedies under the Railway Labor Act, *see* H.R.Rep. No. 96–1025, 96th Cong., 2d Sess., *reprinted in* 1980 U.S.Code Cong. & Admin.News 3830, 3840. The section refers to federal statutes or regulations, not the common law remedies of the fifty states. Clearly, the purpose of the provision was not "to alter existing protection, but rather to put the prohibition of discrimination into statutory form." *Id. See also Rayner*, 687 F.Supp. at 996 n. 5. Section 441(d) is therefore not a general election of remedies provision.

## VI.

We hold that the "whistleblower" provision of the Federal Railroad Safety Act provides appellant a federal remedy for his employer's alleged retaliatory acts. Section 441 preempts his Maryland cause of action for wrongful discharge, *see* 45 U.S.C. § 434, and this action was therefore properly removed to federal court. Appellant's claim is dismissed without prejudice for failure to pursue his federal administrative remedies. The judgment of the district court is hereby

AFFIRMED.