Grady Colin KELLEY, Plaintiff,

v.

NORFOLK & SOUTHERN RAILWAY
COMPANY, dba Norfolk & Western
Railway Company, Defendant.

No. 3:99–0730.

United States District Court,
S.D. West Virginia,
Huntington Division.

Dec. 28, 1999.

Thomas M. Plymale, Wayne, WV, Charles W. Armbruster, III, Wood River, IL, for plaintiff.

J.H. Mahaney, Huntington, WV, for defendant.

## MEMORANDUM OPINION AND ORDER

GOODWIN, District Judge.

The plaintiff Grady C. Kelley filed an action against Norfolk Southern Railway Company (Norfolk) in the Circuit Court of Wayne County, West Virginia, alleging that Norfolk unlawfully retaliated against him for filing an earlier personal injury case. Kelley's claim is for the emotional distress he allegedly suffered as a result of Norfolk's retaliatory acts. Norfolk removed to this Court asserting that one who complains about retaliation for the filing of a personal injury action is limited to relief under the whistleblower protections of the Federal Railroad Safety Act (FRSA), 49 U.S.C. § 20101 *et seq.*

Pending is Kelley's motion to remand to state court, which presents the questions of whether the provisions of the FRSA preempt this action, or in the alternative, whether the action is preempted by the Railway Labor Act (RLA), 45 U.S.C. § 151 *et seq.* With respect to the FRSA, the Court must determine whether Kelley's earlier filing of a personal injury action under the Federal Employers' Liability Act (FELA), 45 U.S.C. § 51 *et seq.*, constitutes the reporting of a safety violation within the meaning of the FRSA whistleblower statute, 49 U.S.C. § 20109. With respect to the RLA, the Court must determine whether Kelley's action constitutes a "minor dispute" that the RLA preempts.

For the reasons discussed below, the Court **GRANTS** Kelley's motion to remand.

### I.

The facts as alleged by plaintiff are sparse. Kelley was employed by Norfolk when he suffered injuries while on the job in October 1990.[1] Kelley then filed a per-

---

1. Kelley provides no details in his complaint or briefs in support of the motion regarding

sonal injury action in state court against Norfolk under FELA. This Court learned during the initial management conference held on October 22, 1999 that Kelley recovered a jury verdict in state court in excess of $700,000. The verdict is now on appeal to the West Virginia Supreme Court of Appeals.

The complaint alleges that after Kelley filed his personal injury action under FELA, Norfolk retaliated against him by intentionally causing him "to suffer severe mental anguish and emotional distress." More specifically, Kelley alleges that Norfolk:

(a) Created a work environment hostile to all employees injured while on the job;

(b) Made it known that any employee who files a claim for an on-the job injury would be severely reprimanded and/or terminated;

(c) Used armed agents to invade Plaintiff's privacy and conduct surveillance on a near constant basis for more than one year;

(d) Threatened to have Plaintiff criminally prosecuted unless he voluntarily dismissed his lawfully filed claim under the Federal Employer's (sic) Liability Act for injuries received while on the job on October 11, 1990.

(Compl.¶ 4.)

On June 29, 1999, Kelley filed this suit in the Circuit Court of Wayne County, West Virginia, asserting two causes of action for intentional infliction of emotional distress. Count I seeks relief under FELA. Count II requests relief under West Virginia common law. Norfolk removed the action to this Court pursuant to 28 U.S.C. § 1446 on the ground that Kelley's claims arise under federal law because they are "completely preempted" by both the whistleblower protections of the FRSA, 49 U.S.C. § 20109, and the RLA. Kelley now requests this Court to remand

the case to state court and to award him the attorney's fees and costs incurred in the preparation of the motion.

## II.

■ The propriety of removal to a federal district court depends on whether the action comes within the scope of the district court's subject matter jurisdiction. 28 U.S.C. § 1441(b). An action may be removed only if it could have been brought in federal court originally. When a defendant removes a case on the basis of federal question jurisdiction, the defendant bears the burden of proving the existence of a federal question. *Mulcahey v. Columbia Organic Chems. Co.*, 29 F.3d 148, 151 (4th Cir.1994).

■ Under the well-pleaded complaint rule, "federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987). As the United States Supreme Court explained, the well-pleaded complaint rule "makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law." *Id.* Kelley's first claim alleges intentional infliction of emotional distress pursuant to FELA. A FELA action may be filed in federal court or in state court. *See* 45 U.S.C. § 56. Once filed in state court, however, a FELA claim may not be removed to federal court unless the complaint contains a separate and independent federal question claim. *See* 28 U.S.C. § 1445(a). It is undisputed that Kelley's second claim, which relies entirely on state common law, is not a federal question claim.

■ A defense of federal preemption ordinarily does not invoke federal jurisdiction. *See Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987) ("As a defense, it does

his employment by Norfolk. Further, Kelley does not set forth any details with respect to the cause and extent of the injuries that he suffered. In Norfolk's opposition to the mo-

tion to remand, Norfolk states that Kelley sustained injuries when he fell from a chair while working as a yard clerk.

not appear on the face of a well-pleaded complaint, and therefore, does not authorize removal to federal court"). However, the "complete preemption" doctrine is an exception to the well-pleaded complaint rule. *Id.* at 65, 107 S.Ct. 1542; *Rayner v. Smirl,* 873 F.2d 60, 63 (4th Cir.1989). Under the "complete preemption" doctrine, if a federal statute so completely preempts an area of state law, "any claim purportedly based on that preempted state law is considered, from its inception, a federal claim, and therefore arises under federal law." *Caterpillar,* 482 U.S. at 393, 107 S.Ct. 2425; *Rayner,* 873 F.2d at 63. Norfolk argues that the "complete preemption" doctrine is applicable here because Kelley's claims are completely preempted by both the FRSA and the RLA.

■ Federal preemption is a question of congressional intent. *Cipollone v. Liggett Group, Inc.,* 505 U.S. 504, 516–17, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992). Courts must examine the text and structure of a statute to determine if it is the "clear and manifest purpose of Congress to preempt an area of state law." *CSX Transp. v. Easterwood,* 507 U.S. 658, 662–64, 113 S.Ct. 1732, 123 L.Ed.2d 387 (1993); *Peters v. Union Pac. R.R. Co.,* 80 F.3d 257, 261 (8th Cir.1996). The Court reviews Norfolk's preemption arguments under the FRSA and RLA seriatim.

### III.

In 1970, Congress enacted the FRSA "to promote safety in every area of railroad operations and reduce railroad-related ac-

cidents and incidents." 49 U.S.C. § 20101; Pub.L. No. 91–458, 84 Stat. 971, as amended, 49 U.S.C. § 20101 *et seq.* In the 1980 amendments to the FRSA, Congress afforded explicit protection to railroad "whistleblowers." *See Federal Railroad Safety Authorization Act of 1980,* Pub.L. No. 96–423, § 10, 94 Stat. 1815 (1980); *see also Rayner,* 873 F.2d at 63. The amendments expressly prohibit railroads from discharging or discriminating against an employee who reports a railroad safety violation, and they provide a federal remedy to employees who claim that they have been discharged or retaliated against for reporting safety violations. *Rayner,* 873 F.2d at 63.

Norfolk contends that the FRSA, specifically the whistleblower protection statute at 49 U.S.C. § 20109(a), provides an exclusive remedy to Kelley for the alleged retaliation resulting from his prior filing of a FELA personal injury action. Accordingly, Norfolk argues that Kelley's claims for intentional infliction of emotional distress are completely preempted.[2]

Before addressing this issue of exclusivity, the Court must first determine whether the FRSA provides a remedy to Kelley at all.[3] 49 U.S.C. § 20109(a)[4] provides that:

A railroad carrier engaged in interstate or foreign commerce may not discharge or in any way discriminate against an employee because the employee, whether acting for the employee or as a representative, has—

(1) filed a complaint or brought or caused to be brought a proceeding

---

**2.** 49 U.S.C. § 20109(c) provides that claims arising under § 20109 are subject to administrative resolution under the RLA, 45 U.S.C. § 153. Norfolk has indicated that if the Court finds that removal was proper, it will move to dismiss the action on the grounds that this Court lacks subject matter jurisdiction and that Kelley failed to first pursue his federal administrative remedies pursuant to § 20109(c).

**3.** If the Court finds that § 20109 does in fact provide Kelley a remedy, the Court has no doubt that Kelley's claims for intentional infliction of emotional distress would be preempted. *See Rayner,* 873 F.2d at 64–66.

The FRSA includes an explicit preemption provision. 49 U.S.C. § 20106. Furthermore, in *Rayner,* the Fourth Circuit explicitly held that the FRSA preempts not just state safety standards, but also any state law claims that arise out of allegations that a railroad employee was subjected to adverse employment action as the result of safety complaints made by the employee. *Rayner,* 873 F.2d at 65–66.

**4.** The FRSA was recodified by Congress in 1994. The FRSA was previously codified at 45 U.S.C. § 421 *et seq.,* and the whistleblower protections were previously found at 45 U.S.C. § 441(a).

related to the enforcement of this part or, as applicable to railroad safety, chapter 51 or 57 of this title; or

(2) testified or will testify in that proceeding.

The first question presented by the pending motion is whether Kelley's filing of a FELA personal injury action constitutes the taking of an action "related to the enforcement of [railroad safety]" within the meaning of § 20109.

Norfolk argues that § 20109 is applicable to Kelley's claims because the filing of a personal injury action is an action related to railroad safety. That is, Norfolk maintains that a personal injury action filed by an employee necessarily implicates railroad safety laws because a violation of a safety regulation may be the cause of the injury. Therefore, according to Norfolk, retaliation against an employee for filing a personal injury action is encompassed by the broad protections of § 20109.

Norfolk cites no apposite authority in support of its argument. Instead, Norfolk relies heavily on *Rayner* for the proposition that the FRSA, including the provisions of § 20109, "should be broadly construed to effectuate the congressional purpose" of the FRSA and the employee protections contained therein. *Rayner*, 873 F.2d at 63. In *Rayner*, a former locomotive engineer who was promoted to a supervisory position alleged that he observed several safety violations and reported them to his superiors at the railroad company. *Id.* at 62. He was later removed from his supervisory position and reassigned to a different location. *Id.* The plaintiff filed suit, asserting state law wrongful discharge claims, and alleging that the railroad company retaliated against him for reporting safety violations. *Id.* The issue in *Rayner* was whether § 20109 [5] applied to intra-corporate safety reports or whether it applied

solely to safety complaints made to outside agencies. In holding that § 20109 provided an exclusive remedy to the plaintiff, the court found that it was "Congress'[s] intent to protect all railroad employees who report *safety violations* ... [and] the distinction between intra-corporate complaints and those made to outside agencies is therefore an 'artificial one.'" *Id.* at 64 (emphasis added).

■ Although *Rayner* affirms the general proposition that all safety legislation should be broadly construed, nothing in that decision leads to the conclusion that an employee's filing of a personal injury action under FELA or state law falls within the reach of § 20109. Indeed, the Fourth Circuit repeatedly refers to that section as "the federal 'whistleblower' statute." *Id.* at 62, 64 (stating that "[§ 20109] provides a broad federal remedy for railroad 'whistleblowers'").

Unlike the trivial difference between an intra-corporate and an inter-agency report of a safety violation, the distinction between the filing of a personal injury action and the reporting of a safety violation, either by a complaint or other proceeding, is not "artificial." Congress specifically designed § 20109 to protect employees who report safety violations for the purpose of promoting railroad safety. The FRSA recognizes that because of their proximity to the working conditions, railroad employees play a vital role in accomplishing the safety goals embodied in the Act. Often, a railroad employee may be the only person who has knowledge of a major safety violation. Indeed, the employee may be the last line of defense before the occurrence of a tragic accident.

Generally, a whistleblower does not receive a pecuniary gain for reporting the safety violation or illegal activity of the employer. The motivation arises from a deep sense of moral concern for the public's safety.[6] Congress recognized, howev-

---

5. At the time of the *Rayner* decision, the "whistleblower" statute was codified at 45 U.S.C. § 441(a).

6. Whistleblowing has been defined as the act of someone "who, believing that the public interest overrides the interest of the organization he serves, publicly 'blows the whistle' if

er, that despite the possible tragic consequences that may result from silence, many employees are paralyzed into silence by fear of retaliation. Therefore, considering the substantial public policy reasons and benefits, Congress decided to provide extra protection to railroad whistleblowers beyond the protections that govern the employer-employee relationship.

Every personal injury action against the railroad raises safety issues, either directly or indirectly. *Cf. Mason v. Norfolk Southern Corp.*, 1997 WL 733901 at *1 (N.D.Ill. 1997) (finding that state court claim for retaliatory discharge relating to employee's turning in an accident report was not based on an independent federal question claim even though the complaint specifically referenced § 20109). The primary function of a FELA or state law personal injury claim is to compensate an employee for the personal injuries that he suffered. The primary purpose of the FRSA is to protect employees who report safety violations. The FRSA cannot be read to preempt claims alleging retaliation for straight forward personal injury claims.[7]

Norfolk next argues that because it is required to report certain injuries to the Federal Railway Administration, it follows that a FELA or other personal injury claim for those injuries is an action brought for the purpose of reporting a safety violation. A variety of actions exist that a railroad employee might take that could conceivably have an indirect impact on railroad safety. Such an action, however, is not a complaint or proceeding "related to the enforcement of [railroad safety"] within the meaning of § 20109. The relation must be direct and purposeful.

Finally, Norfolk attempts to re-characterize Kelley's complaint as an action that

seeks redress from large-scale preventive measures designed to eliminate the reporting of all future safety violations. The Court finds that Norfolk mischaracterizes the complaint. First, the alleged conduct is alleged to be primarily retaliatory, not prospective. The general allegations with respect to conduct against all of Norfolk's employees are merely provided as additional examples of the type of harassment that Kelley was forced to endure.

Moreover, Norfolk cannot simply choose to retaliate against all of its employees, and by so doing, convert Kelley's prior FELA personal injury action into something else. Even if Norfolk's motive in allegedly engaging in the retaliatory and discriminatory acts was to prevent both the reporting of safety violations and lawsuits, this does not make Kelley's prior FELA action a claim related to the enforcement of railroad safety. Kelley's complaint alleges harassment in retaliation for his filing a personal injury action under FELA, not for reporting a safety violation.

In sum, this Court **FINDS** that a personal injury action under FELA is not a "proceeding related to the enforcement of [railroad safety]" even though the action may have a secondary effect on railroad safety.

## IV.

■ Norfolk also argues that Kelley's intentional infliction of emotional distress claims are preempted by the RLA. The RLA was enacted by Congress "to promote stability in labor-management relations by providing a comprehensive framework for resolving labor disputes." *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 252, 114 S.Ct. 2239, 129 L.Ed.2d

the organization is involved in corrupt, illegal, fraudulent, or harmful activity." Gregory G. Sarno, *Federal Pre–Emption of Whistleblower's State Law Action for Wrongful Retaliation*, 99 A.L.R.Fed. 775, 778, n. 1 (1990) (stating that whistleblowing "does not encompass an employee's simply filing a claim under workers' compensation statutes").

7. Since Congress decided to allow FELA actions to be filed in federal or state court, it could not have been Congress's intent to allow the FRSA to preempt any action that has a secondary or indirect effect on railroad safety. Such a construction would virtually eliminate any state's ability to decide a FELA action that arises in an industry that has a specific statute governing liability.

203 (1994). To accomplish this goal, "the RLA establishes a mandatory arbitral mechanism for 'the prompt and orderly settlement' of two classes of disputes." *Id.* (citing 45 U.S.C. § 151a).

The two classes of disputes are "major" and "minor" disputes. Major disputes are defined as disputes that relate to "the formation of collective [bargaining] agreements or efforts to secure them." *Consolidated Rail Corp. v. Railway Labor Executives' Ass'n.*, 491 U.S. 299, 302, 109 S.Ct. 2477, 105 L.Ed.2d 250 (1989) (quoting *Elgin, J. & E.R. Co. v. Burley*, 325 U.S. 711, 723, 65 S.Ct. 1282, 89 L.Ed. 1886 (1945)). Minor disputes are those that "gro[w] out of grievances or out of the interpretation or application of agreements covering rates of pay, rules, or working conditions," 45 U.S.C. § 151a, and involve "controversies over the meaning of an existing collective bargaining agreement in a particular fact situation," *Norris*, 512 U.S. at 253, 114 S.Ct. 2239 (quoting *Trainmen v. Chicago R & I.R. Co.*, 353 U.S. 30, 33, 77 S.Ct. 635, 1 L.Ed.2d 622 (1957)). Minor disputes are those that are grounded in the collective bargaining agreement. *See, e.g., Consolidated Rail Corp.*, 491 U.S. at 305, 109 S.Ct. 2477; *see also Pittsburgh & Lake Erie R. Co. v. Railway Labor Executives' Ass'n.*, 491 U.S. 490, 496 n. 4, 109 S.Ct. 2584, 105 L.Ed.2d 415 (1989) ("Minor disputes are those involving the interpretation or application of existing contracts.").

Norfolk contends that Kelley's claims are minor disputes because they require an interpretation and application of the collective bargaining agreement. All minor disputes must be resolved under the RLA mechanisms, which include internal dispute-resolution processes and an adjustment board established by the unions and employer. *See* 45 U.S.C. § 184; *Norris*, 512 U.S. at 253, 114 S.Ct. 2239. The National Railroad Adjustment Boards have exclusive jurisdiction over minor disputes. Therefore, if the Court finds that his claims constitute a minor dispute, Kelley's intentional infliction of emotional distress claims are preempted by the RLA. *Id.*

The RLA does not preempt a cause of action if it involves rights and obligations that exist independent of the collective bargaining agreement. *Id.* at 256, 114 S.Ct. 2239 (finding that employer had a state law obligation not to fire employee in retaliation for whistleblowing that was independent of the collective bargaining agreement). "[A] state law claim is independent of a CBA for preemption purposes 'as long as the state-law claim can be resolved without interpreting the agreement itself.'" *Monroe v. Missouri Pac. R.R. Co.*, 115 F.3d 514, 517 (7th Cir. 1997). Furthermore, "[t]he bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished." *Norris*, 512 U.S. at 261, 114 S.Ct. 2239 (quoting *Livadas v. Bradshaw*, 512 U.S. 107, 124, 114 S.Ct. 2068, 129 L.Ed.2d 93 (1994)); *see also Loewen Group Int'l, Inc. v. Haberichter*, 65 F.3d 1417, 1423 (7th Cir.1995) (stating that "not all cases which tangentially touch collective bargaining agreements call for ... preemption").

Contrary to Norfolk's argument, Kelley's claims do not depend on an interpretation or application of the collective bargaining agreement. The protections upon which Kelley relies are laid down by state employment authority and are independent of the collective bargaining agreement. *See generally Atchison, Topeka & Santa Fe Railway Co. v. Buell*, 480 U.S. 557, 564–65, 107 S.Ct. 1410, 94 L.Ed.2d 563 (finding that FELA provided railroad employee a remedy and rights that were independent of the collective bargaining agreement). Even if the collective bargaining agreement must be consulted or referred to during the course of litigation, that alone is simply insufficient to render Kelley's claims a minor dispute. *Norris*, 512 U.S. at 261, 114 S.Ct. 2239.

The issues to be determined in this case are purely factual. *See, e.g., Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 407, 108 S.Ct. 1877, 100 L.Ed.2d 410

(1988) (finding that "purely factual questions regarding an employee or employer's conduct do not 'requir[e] a court to interpret any term of a collective-bargaining agreement'"). Here, the trier-of-fact must determine whether Norfolk's alleged acts were intentionally designed to harass and motivated by retaliatory reasons. In making the factual determinations, the trier-of-fact would receive little, if any, benefit from consulting the collective bargaining agreement.

The cases that Norfolk cites are distinguishable from this case. For example, in *Monroe,* the Seventh Circuit found that an employee's claims for wrongful discharge were preempted by the RLA because the claims required interpretation of the collective bargaining agreement. *Monroe,* 115 F.3d at 518. In that case, the court considered whether the railroad failed to avail itself of its right to force the employee to undergo a physical examination pursuant to the collective bargaining agreement. The court also applied and interpreted the standards found in the collective bargaining agreement regarding an employee's physical condition. For those reasons and others, the court distinguished *Norris* and found that the railroad's motivation behind the employee's termination did not involve purely factual questions.[8] *Id.*

In Kelley's case, the ultimate fact-finder does not need to apply or interpret standards found in the collective bargaining agreement. The dispositive question for the trier-of-fact is whether Norfolk retaliated against Kelley as a result of his filing a personal injury action under FELA. It is a "purely factual question[ ] regarding [the] employee or employer's conduct." *Lingle,* 486 U.S. at 407, 108 S.Ct. 1877.

Accordingly, the Court holds that the RLA does not preempt Kelley's claims for intentional infliction of emotional distress.

## V.

For the reasons discussed above, the Court holds that Kelley's claims are not preempted by either § 20109 of the FRSA, or by the RLA. Accordingly, Kelley's motion to remand the action to state court is **GRANTED,** Kelley's request for attorney's fees and costs is **DENIED** because Kelley has not shown bad faith on the part of Norfolk.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

---

8. Likewise, in *Fry v. Airline Pilots Ass'n., Int'l,* 88 F.3d 831 (10th Cir.1996), the Tenth Circuit found that the RLA preempted non-striking pilots' state law claims. *Id.* at 836. The issue was whether the airline reneged on its responsibility to protect the non-striking pilots from post-strike harassment. The court found that their claims were minor disputes because they required an interpretation regarding what level of protection was required

by the agreement. *Id.* at 836–37 ("Only by comparing the protective system promised by United with the system put into place by the various labor agreements between United and the union can the fact finder determine whether United breached its contract with the plaintiffs, whether United's representations were false, and whether United's conduct was outrageous").