**Clay E. MONROE, Plaintiff–Appellant,**

v.

**MISSOURI PACIFIC RAILROAD COMPANY and Union Pacific Railroad Company, Defendants–Appellees.**

No. 96–2862.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 7, 1997.

Decided June 10, 1997.

Jerome J. Schlichter (argued), Nannette A. Baker, Fairview Heights, IL, for Plaintiff-Appellant.

Kurt E. Reitz (argued), Mary S. Juen, Thompson Coburn, Belleville, IL, David A. Dick, St. Louis, MO, for Defendants-Appellees.

Before FAIRCHILD, CUMMINGS, and KANNE, Circuit Judges.

KANNE, Circuit Judge.

This case calls upon us to resolve whether the district court properly dismissed Clay Monroe's wrongful discharge claims, which he brought pursuant to the Federal Employers Liability Act ("FELA") and Illinois public policy. We agree with the district court that it lacked subject matter jurisdiction to adjudicate Monroe's claims as they were preempted by the Railway Labor Act ("RLA"). Thus, we affirm the dismissal of Monroe's action.

## I. HISTORY

Clay Monroe worked for thirteen years as a brakeman for the Missouri Pacific Railroad and the Union Pacific Railroad (collectively, "the Railroad"). Monroe was injured at work on July 20, 1992, and his doctor advised him to take a medical leave of absence. In October of that year, the Railroad hired a private investigator to conduct surveillance on Monroe as he had not yet returned to work due to his alleged injuries and physical incapacity. The Railroad's investigators discovered that Monroe was working at his father's business, where he was selling and installing satellite television systems. At one point, the investigators ordered a satellite dish from Monroe while posing as homeowners and then videotaped Monroe while he helped install the dish. In December 1992, Monroe's doctor permitted him to return to work for the Railroad.

The Railroad subsequently commenced a collective bargaining agreement ("CBA") hearing regarding the propriety of Monroe's conduct while on medical leave. Evidence at the hearing included the videotape of Monroe installing the satellite system, as well as testimony from a doctor who opined that Monroe could do physical railroad work. This doctor, however, neither spoke with Monroe nor physically examined him. On December 17, 1992, the Railroad discharged Monroe for misrepresenting his physical condition.

Monroe subsequently filed four separate legal proceedings against the Railroad challenging his dismissal: 1) he filed a CBA labor grievance based on his alleged wrongful termination[1]; 2) he brought a civil suit in the Madison County Circuit Court (Illinois) based on the Railroad's private investigation of him, including claims of fraud, conspiracy, and similar torts; 3) he filed another civil suit in the St. Louis Circuit Court (Missouri) pursuant to the FELA, seeking damages for the personal injuries he sustained on July 20, 1992; and 4) he brought the present action.

---

1. On November 22, 1996, an arbitration panel in the Public Law Board No. 5314 reached a conclusion regarding Monroe's CBA labor grievance. It ruled that the Railroad's disciplinary investiga- tion against Monroe was not fair and impartial and ordered Monroe "reinstated to service with all rights unimpaired and with backpay."

The case before us involves a three-count complaint that Monroe filed on March 19, 1996 in the Circuit Court of Marion County, Illinois. Count I attempts to state a claim under the FELA, 45 U.S.C. § 55, alleging that the Railroad wrongfully discharged Monroe in an attempt to defeat any personal injury claims Monroe might have against the Railroad under the FELA. Count II asserts that the Railroad's wrongful discharge of Monroe violated Illinois public policy because it attempted to prevent Monroe from fully exercising his right to collect damages for his work-related injuries. Count III claims that the Railroad's alleged misconduct was willful and wanton, and is essentially a prayer for punitive damages.

The Railroad removed the case to the United States District Court for the Southern District of Illinois on April 26, 1996, and it filed a Motion to Dismiss based on the federal court's lack of subject matter jurisdiction (Fed.R.Civ.P. 12(b)(1)) and Monroe's failure to state a claim upon which relief could be granted (Fed.R.Civ.P. 12(b)(6)). On July 9, 1996, the district court granted the Railroad's motion to dismiss based on lack of subject matter jurisdiction, finding that the RLA preempted Monroe's FELA and Illinois public policy claims.

## II. ANALYSIS

■ We must decide whether the district court correctly found that the RLA preempts Monroe's wrongful discharge claims under the FELA and under Illinois public policy. We review de novo a district court's grant of a motion to dismiss for subject matter jurisdiction. *Underwood v. Venango River Corp.*, 995 F.2d 677, 679 (7th Cir.1993), *overruled on other grounds, Westbrook v. Sky Chefs, Inc.*, 35 F.3d 316 (7th Cir.1994).

■ Whether a federal law preempts another law that establishes a cause of action is a question of congressional intent. *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 251–52, 114 S.Ct. 2239, 2243, 129 L.Ed.2d 203 (1994). The arguably preemptive federal law in this case—the RLA-provides a comprehensive framework for resolving labor disputes, including a mandatory arbitral mechanism for "the prompt and orderly set-tlement" of two classes of disputes. *Id.; see* 45 U.S.C. § 151a; *Atchison, Topeka & Santa Fe Ry. v. Buell*, 480 U.S. 557, 562, 107 S.Ct. 1410, 1413–14, 94 L.Ed.2d 563 (1987). The first class of disputes-major disputes—seeks to create contractual rights; and the second class—minor disputes—seeks to enforce these rights. *See Hawaiian Airlines*, at 252–54, 114 S.Ct. at 2244. The Railroad contends that this case involves a minor dispute.

Minor disputes grow "out of grievances or out of the interpretation or application of agreements covering rates of pay, rules, or working conditions," 45 U.S.C. § 151a, and they "involve controversies over the meaning of an existing collective bargaining agreement in a particular fact situation," *Hawaiian Airlines*, at 252–54, 114 S.Ct. at 2244 (quoting *Brotherhood of R.R. Trainmen v. Chicago R. & I.R. Co.*, 353 U.S. 30, 33, 77 S.Ct. 635, 636–37, 1 L.Ed.2d 622 (1957)). All minor disputes must be adjudicated under RLA mechanisms, which include an employer's internal dispute-resolution procedures and an adjustment board established by the unions and the employer. *Id.; see* 45 U.S.C. § 184. If Monroe's FELA and Illinois public policy claims are "minor disputes," they are, of course, preempted by the RLA.

In *Hawaiian Airlines*, the Supreme Court addressed the preemption of minor disputes under the RLA. The Court held that not all grievances or employment-related disputes are considered "minor disputes" for RLA preemption purposes. *Hawaiian Airlines*, at 252–54, 114 S.Ct. at 2244. Rather, " 'grievances,' like disputes over 'the interpretation or application' of CBAs, refers to disagreements over how to give effect to the bargained-for agreement." *Id. Hawaiian Airlines* ultimately found that the RLA did not preempt the plaintiff's state-law tort actions—which were based on the state's public policy and its whistle-blower statute—because those claims necessitated a purely factual inquiry into the retaliatory motivations of the employer and did not require interpretation of the relevant CBA. *Id.* at 266, 114 S.Ct. at 2251.

In reaching this conclusion, *Hawaiian Airlines* embraced the analysis from a prior preemption case, *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988). *See Hawaiian Airlines*, at 262–64, 114 S.Ct. at 2249 ("[W]e conclude that *Lingle* provides an appropriate framework for addressing pre-emption under the RLA, and we adopt the *Lingle* standard to resolve claims of RLA pre-emption."). In *Lingle*, the Court held that the plaintiff's state-law retaliatory discharge claim was not preempted by the Labor Management Relations Act ("LMRA") because it turned on "purely factual questions" regarding the employer's motivation behind the discharge and it did not require interpretation of any CBA term. *Lingle*, 486 U.S. at 407, 108 S.Ct. at 1882. In reaching this decision, the *Lingle* Court recognized that dispute resolution pursuant to a CBA and the adjudication of a separate state-law claim might require different tribunals to address the same set of facts, *id.* at 408–09, 108 S.Ct. at 1882–83; nonetheless, the Court ruled that a state claim is independent of a CBA for preemption purposes "as long as the state-law claim can be resolved without interpreting the agreement itself," *id.* at 410, 108 S.Ct. at 1883.

We have had the opportunity to decide RLA preemption cases since *Hawaiian Airlines* adopted the *Lingle* standard. In *Bielicke v. Terminal R.R. Ass'n*, 30 F.3d 877 (7th Cir.1994)—a case strikingly similar to the one before us—we held that the RLA preempted the plaintiffs' FELA claims, which alleged that the railroad wrongfully discharged plaintiffs and improperly abused its investigatory powers in an attempt to discourage plaintiffs from pursuing other FELA actions to recover damages for their job-related personal injuries.[2] Significantly, we reasoned that "[o]ne cannot determine whether Terminal Railroad conducted the investigations for legitimate purposes under the collective bargaining agreements or if they abused the investigation procedures allowed by the collective bargaining agreements ... without focusing the case on the collective bargaining agreements themselves." *Id.* at 878.

More recently, we held that the RLA did not preempt a plaintiff's retaliatory discharge action filed under the Illinois Workers' Compensation Act. *See Westbrook v. Sky Chefs, Inc.*, 35 F.3d 316 (7th Cir.1994). In *Sky Chefs*, we found that plaintiff's cause of action was not a minor dispute (and thus not preempted) because it involved "rights and obligations that exist independent of the collective bargaining agreement." *Id.* at 318 (quoting *Hawaiian Airlines*, at 258–60, 114 S.Ct. at 2247). In reaching this conclusion, we based our decision solely on the fact that the CBA did not provide the "only source" of plaintiff's rights, and we had no occasion to address whether the adjudication of plaintiff's state-law claim would involve interpretation or application of a CBA. *See id.* at 317–18.

■ In this case, the Railroad argues that Monroe's claims are preempted because they are minor disputes that require interpretation of the CBA. Monroe, in contrast, maintains that his claims are not minor disputes because they are not based on the rights given by the CBA, but rather are "independently based" on rights conferred by the FELA and the State of Illinois. The gravamen of Monroe's claim is that the Railroad terminated his employment in order to interfere with his potential FELA personal injury claim, and that both the FELA and Illinois public policy prohibit such action by the

---

**2.** Monroe argues that we should not consider *Bielicke* because that decision did not discuss *Hawaiian Airlines*. In making this argument, Monroe suggests that the *Bielicke* court may not have considered *Hawaiian Airlines* because the Supreme Court decided *Hawaiian Airlines* only one month before we decided *Bielicke*, and apparently neither party in *Bielicke* requested that we reconsider our decision in light of the recent *Hawaiian Airlines* decision.

Plaintiff raises legitimate concerns, and we therefore tread lightly in discussing *Bielicke*.

Nonetheless, we find the *Bielicke* decision to be valid and helpful here—it was decided *after Hawaiian Airlines*, it has not been overruled, and its facts are nearly identical to those before us. Moreover, although *Bielicke* did not discuss *Hawaiian Airlines*, its holding comports with the Supreme Court's reasoning in both *Hawaiian Airlines* and *Lingle*. In all three cases, a key component in the preemption analysis remains whether a plaintiff's claims require a court to interpret a CBA.

Railroad. Monroe also maintains that the adjudication of his complaint requires no interpretation of the CBA because the only questions are "whether the employee was discharged ... and, if so, whether the employer's motive in discharging him was to deter or interfere with his exercise of rights" protected by the FELA and Illinois public policy. See Hawaiian Airlines, at 260–62, 114 S.Ct. at 2248.

Like the district court, we agree that an uncritical glance at Monroe's claims seems to compel a finding of no preemption in light of the Supreme Court's Hawaiian Airlines and our Sky Chefs decisions. We need not analyze any part of the CBA to determine that the Railroad actually terminated Monroe. Moreover, Monroe correctly asserts that the source of his claims is independent of the CBA because they are found in the FELA and in Illinois public policy.[3] Monroe's argument falters, however, when he asserts that the Railroad's motivation behind his termination involves a purely factual question that requires no interpretation or application of the CBA.

Unlike the claims in Hawaiian Airlines and Lingle, Monroe's claims do not involve purely factual questions, and they do require interpretation of the CBA. Any analysis of Monroe's wrongful discharge claims necessarily requires interpretation of the CBA in order to determine the validity of his arguments regarding the Railroad's retaliatory intent.

First of all, Monroe's complaint alleges that the Railroad failed to avail itself of its right to compel him to undergo a physical examination if it contested his medical condition. The CBA provides the Railroad with its right to compel such an examination. Second, a court must apply and interpret the standards regarding an employee's physical condition—which are implied terms of the CBA—when analyzing Monroe's claim of pretextual discharge. See Fry v. Airline Pilots Ass'n, Int'l, 88 F.3d 831, 836 (10th Cir.1996) (A "plaintiff's claims are minor disputes if they depend not only on a right found in the CBAs, but also if they implicate practices, procedures, implied authority, or codes of conduct that are part of the working relationship."). Third, Monroe questions the propriety of his disciplinary hearing as well as the sufficiency of the evidence proffered at that hearing by objecting to the testimony of a doctor who never examined him. This hearing was conducted pursuant to the CBA and the RLA, thereby necessitating the court's interpretation of that agreement and those laws. Fourth, Monroe's claims involve past and future wages, benefits, and promotions—all of which are determined by the CBA.[4] Finally, in one of Monroe's three other legal actions, Monroe himself argued that his claim against the Railroad for unmeritorious discipline (i.e., his dismissal) must be analyzed under the CBA and the RLA.[5] In light of these facts, we must conclude that Monroe's FELA and Illinois public policy claims involve interpretation of the CBA, and thus they are minor disputes that can only be adjudicated under the RLA.

Monroe asserts that Hawaiian Airlines specifically rejected the notion that a CBA

---

3. This assumes, of course, that Monroe has stated claims upon which relief may be granted—a premise that the Railroad vigorously contests and of which we are highly skeptical. Nonetheless, we need not address whether Monroe has stated valid claims under Fed.R.Civ.P. 12(b)(6) due to our finding of preemption.

4. While this reason alone would not compel a finding that Monroe's claims involve application or interpretation of a CBA, it does aid our analysis. Cf. Livadas v. Bradshaw, 512 U.S. 107, 124–26, 114 S.Ct. 2068, 2079, 129 L.Ed.2d 93 (1994) ("[T]he mere need to 'look to' the collective-bargaining agreement for damage computation is no reason to hold the state law claim defeated...."); Lingle, 486 U.S. at 413 n. 12, 108 S.Ct. at 1885 n. 12.

5. The Railroad asserts that Monroe should be judicially estopped from arguing that his wrongful discharge claim is not a minor dispute because of Monroe's "blatant contradiction" in positions regarding whether his rights must be assessed under the CBA and the RLA. Because we find that the RLA preempts Monroe's claims, we need not reach the Railroad's judicial estoppel argument. We note, however, that Hawaiian Airlines apparently permits a plaintiff to maintain both an RLA action before a Public Law Board and a wrongful discharge action before a state or federal court so long as the state or federal court claim does not require interpretation or application of a CBA. Hawaiian Airlines, at 258–64, 114 S.Ct. at 2247–49.

must be consulted in order to determine the propriety of a discharge. But the only "interpretation" question put forth in *Hawaiian Airlines* was whether the employee was, in fact, discharged. *Hawaiian Airlines,* at 266, 114 S.Ct. at 2251. The Court rejected the employer's argument, reasoning that the determination of whether the employee was discharged was a "purely factual question." *Id.* In this case, there is no dispute about the purely factual question of whether Monroe was discharged—he clearly was terminated by the Railroad. Rather, the factual matters at issue here involve the propriety of Monroe's discharge.

Moreover, contrary to Monroe's assertions, we can easily harmonize our decision today with our decision in *Sky Chefs.* *Sky Chefs* relied upon only one aspect of the RLA preemption standard set out in *Hawaiian Airlines* and *Lingle*—whether a CBA provided the only source for a plaintiff's wrongful discharge claim. *Sky Chefs,* 35 F.3d at 318. Here, we have the occasion to address a second facet of the *Hawaiian Airlines–Lingle* standard—whether the adjudication of a plaintiff's claim requires interpretation of a CBA. Our *Sky Chefs* decision should not be narrowly construed to eliminate this latter, and crucial, element of the *Hawaiian Airlines–Lingle* preemption standard.

Our finding of preemption here also complies with the recent application of *Hawaiian Airlines* by two other circuits. In *Kollar v. United Transportation Union,* 83 F.3d 124 (5th Cir.1996), the Fifth Circuit found that the RLA preempted plaintiffs' fraud claim because it involved the interpretation of plaintiffs' seniority, which was controlled by a CBA and other modifying agreements. *Id.* at 126. Significantly, the court found that even though the plaintiffs couched their claim in terms of fraud—a source independent of the CBA—the resolution of that claim required interpretation of the CBA: "To prove the falsity of the representations, Plaintiffs would have to show that the relevant seniority provisions of the CBA, the transfer agreement, and modifying letter agreement, differ from the representations made by the Union. This requires interpretation of the CBA left

appropriately to procedures established under the RLA." *Id.*

Similarly, the Tenth Circuit in *Fry* found that several plaintiffs' federal and state claims were preempted because they could not "be understood without reference to the various CBAs." *Fry,* 88 F.3d at 836. That court first noted that the threshold question for RLA preemption after both *Hawaiian Airlines* and *Lingle* remained "whether resolution of the federal and state law claims of the plaintiffs requires interpretation or application of the CBAs." *Id.* at 836. Then it determined that plaintiffs' claims were minor disputes, and thus preempted, because the district court needed to review the relevant CBAs in order to determine the appropriateness of the employer's motives in discharging the striking pilots. *Id.* at 836–37.

Without question, the Supreme Court's *Hawaiian Airlines* decision makes this a close case (or at least a much closer one than before *Hawaiian Airlines* was decided). Moreover, we recognize "that not all cases which tangentially touch collective bargaining agreements call for ... preemption." *Loewen Group Int'l, Inc. v. Haberichter,* 65 F.3d 1417, 1423 (7th Cir.1995); *accord Livadas v. Bradshaw,* 512 U.S. 107, 122–26 & n. 18, 114 S.Ct. 2068, 2078–79 & n. 18, 129 L.Ed.2d 93 (1994). The factual particularities of Monroe's complaint, however, require an interpretation of the CBA and thus mandate our finding of preemption.

Simply put, we believe that the district court correctly determined that what Monroe "attempts to do in *this* lawsuit is to litigate his labor-related claims *under* FELA," and that such a "course of action is *not* permitted by *Hawaiian Airlines.*" *Monroe v. Missouri Pacific R.R. and Union Pacific R.R.,* No. 96–CV–0351–PER, slip op. at 6 (S.D.Ill. July 9, 1996). We cannot allow Monroe to "artfully plead" himself around the preemptive effect of the RLA by framing his CBA claims as wrongful discharge causes of action under the FELA and Illinois public policy. *See Hammond v. Terminal R.R. Ass'n,* 848 F.2d 95, 97 (7th Cir.1988) ("A claim does not arise under the FELA merely because the plaintiff names that statute in his complaint and omits (accidentally or by design) the

claim's true source."). *See generally Bielicke,* 30 F.3d 877. As such, we Affirm the district court's decision dismissing Monroe's claims for lack of subject matter jurisdiction.

FAIRCHILD, Circuit Judge, dissenting in part.

With all respect I do not agree that Monroe's asserted state law claim involves interpretation of the collective bargaining agreement to any significant extent. If the claim has any merit under Illinois law, it exists "independent of the collective bargaining agreement." *Hawaiian Airlines, Inc. v. Norris,* 512 U.S. 246, 264–66, 114 S.Ct. 2239, 2250, 129 L.Ed.2d 203 (1994).

That leads to other questions, not addressed by the majority.

## I. Removal.

Monroe brought his action in an Illinois court. Defendant Railroad Companies removed it to federal district court. 28 U.S.C. § 1445(a) provides that a civil action in any state court against a railroad arising under the FELA may not be removed to any district court of the United States.

In Count I Monroe invoked only the FELA and claimed:

10. The sole reason for the hearing and termination of Plaintiff's employment was to defeat any claim Plaintiff might have for personal injury against the Defendants in an action under the FELA.

11. Such wrongful discharge was illegal in that it violated the 45 U.S.C. § 55 in that it is a device designed to prevent plaintiff from enforcing his rights under the FELA.

In Count II Monroe invoked both the public policy of the FELA and the State of Illinois, alleging that the "discharge violated the public policy of the FELA and the State of Illinois in that it attempted to prevent him from fully exercising his right to collect damages for injuries on the job."

Monroe's theory, sound or not, is that the discharge "arguably eliminates the railroad's liability for Mr. Monroe's lost wages in his injury claim, effectively eliminating much of his remedy under the FELA." Appellant's Brief, pp. 35–36.

There may be two reasons why 28 U.S.C. § 1445(a) does not require remand to state court. (1) Waiver. Years ago it was held that the antecedent of 28 U.S.C. § 1445(a) did not limit the jurisdiction of a district court over an FELA case removed to it, but conferred a personal privilege which may be waived. *Carpenter v. Baltimore & O.R. Co.,* 109 F.2d 375, 379 (6th Cir.1940). Not all courts have agreed, but a majority of those considering the question appear to have done so. Steve Kline, *Waiver of the Right of Non-Removability of Jones Act Claims: Lirette v. N.L. Sperry Sun, Inc.,* 12 Tul. Mar. L.J. 397, 401 (Spring 1988). (The Jones Act adopted relevant portions of the FELA). (2) The part of Count II which invokes state law may be sufficiently independent from claims arising under the FELA that § 1445(a) would not prevent removal.

## II. Claims are not predicated on breach of contract.

Both Counts I and II allege that the discharge was wrongful because of defendants' purpose to defeat or impair plaintiff's rights under the FELA. There is no allegation that it was wrongful because defendants breached some term of the collective bargaining agreement. It is true that paragraph 9 of both counts alleged that defendants had a right to a physical examination of plaintiff, but failed to exercise it. Presumably the collective bargaining agreement was the source of the right. Whatever evidentiary bearing failure to exercise this right might have in proving that the discharge was motivated as alleged, and therefore wrongful, the defendants' failure to exercise their contract right was not an element of the claim. The majority said (*see* supra p. 518) that "Monroe questions the propriety of his disciplinary hearing as well as the sufficiency of the evidence," but there is nothing in the complaint challenging the disciplinary hearing.

The majority cites *Bielicke v. Terminal R.R. Ass'n,* 30 F.3d 877 (7th Cir.1994) and *Hammond v. Terminal R.R. Ass'n of St. Louis,* 848 F.2d 95 (7th Cir.1988). In neither was a state-law claim asserted. *Bielicke* was

argued April 12, 1994, and the opinion was issued July 26, 1994. *Hawaiian Airlines Inc. v. Norris,* 512 U.S. 246, 114 S.Ct. 2239, 129 L.Ed.2d 203 (1994), was decided June 20, 1994, and was not mentioned in *Bielicke.* On their face, the two decisions are not inconsistent. The *Bielicke* plaintiffs alleged that the railroad's investigation and discharge of them violated the FELA, while *Hawaiian* dealt directly with state law claims. The *Bielicke* panel concluded that

> One cannot determine whether Terminal Railroad conducted the investigations for legitimate purposes under the collective bargaining agreements or if they abused the investigation procedures allowed by the collective bargaining agreements ... without focusing the case on the collective bargaining agreements themselves.... [T]hese claims are directly connected with the collective bargaining agreements and thus the claim arises under the RLA, not the FELA.

30 F.3d at 878. Monroe's state law claim requires no such focus.

In *Hammond,* a pre-*Hawaiian* decision, this court held that a claim which nominally invoked the FELA did not arise under the FELA, but under the RLA. The court said that the complaint as it stood at the time of removal "complained only about the railway's having filed allegedly unmeritorious disciplinary charges; it was a pure breach of contract claim...." 848 F.2d at 97.

Neither *Bielicke* nor *Hammond* supports the proposition that Monroe's state-law claim is a breach of contract claim, governed by the RLA.

### III. The validity of Monroe's state-law claim.

Monroe's state-law claim relies on *Kelsay v. Motorola, Inc.,* 74 Ill.2d 172, 23 Ill.Dec. 559, 384 N.E.2d 353 (1978), recognizing the tort of wrongful discharge where an employee was discharged because she filed a worker's compensation claim. "Because of the similarity of purpose between FELA and the Illinois worker's compensation statute, no principled distinction can be made which will disallow a finding of wrongful discharge where the Illinois courts have recognized the tort in the context of worker's compensation." Appellant's Brief p. 28.

There will be difficulties in deciding that issue, but I am convinced that that is the question this case presents to this court. As already indicated, I think there is no foundation for a holding that Monroe's state law claim is preempted.