Julio J. **MOSQUEDA**, Sr., Plaintiff,

v.

**BURLINGTON NORTHERN SANTA FE RAILWAY**, Defendant.

No. Civ.A. 96–4097–DES.

United States District Court,
D. Kansas.

Nov. 5, 1997.

Pantaleon Florez, Jr., Florez & Frost, P.A., Topeka, KS, for Julio J Mosqueda, Sr.

Douglas M. Greenwald, McAnany, Van Cleave & Phillips, P.A., Kansas City, KS, for Burlington Northern Santa Fe Railway.

### *MEMORANDUM AND ORDER*

SAFFELS, Senior District Judge.

This employment discrimination matter comes before the court on defendant's Motion for Partial Summary Judgment (Doc. 25). For the reasons set forth below, defendant's motion is denied.

### I. BACKGROUND

The following facts are uncontroverted or, where controverted, construed in a manner most favorable to the plaintiff as the non-moving party.

Defendant, Burlington Northern Santa Fe Railway ("Burlington Northern"), hired plaintiff on September 11, 1967. Plaintiff alleges that beginning in 1990, he was subjected to a hostile work environment by be-

ing continuously exposed to disparaging ethnic slurs, jokes and comments by co-workers and supervisors. Such conduct allegedly continued until August 4, 1995, when plaintiff was laid off. Plaintiff states that he complained of the hostile work environment to supervision and no effective action was taken to eliminate the hostile environment.

In early October 1994, plaintiff displaced Ann Cook, a junior female employee, from her section 5 clerk position in order to avoid a transfer out of his section. Within several days of plaintiff's move to his new position, he was advised by his immediate supervisor, William Black, that he would be disqualified from the job within the forty-five day qualification period provided by the Collective Bargaining Agreement. Plaintiff alleges that defendant refused to train him for the section 5 clerk responsibilities so that defendant could remove him from the position because of his gender or ancestry or in retaliation for having filed charges of discrimination. On November 14, 1994, defendant counseled plaintiff regarding his poor job performance and disqualified him from his section clerk position effective at the close of business December 19, 1994.

As a result of his disqualification, plaintiff became ineligible for other clerk positions within the company. He was, however, given a position in the company mail room. On August 4, 1995, plaintiff's mail room position was abolished. Pursuant to the terms of the Collective Bargaining Agreement, plaintiff was placed on protective pay status and was to be given preference over junior employees for other positions within the company that became available. Instead, plaintiff alleges, defendant recalled and hired more junior employees for positions that he was qualified to fill, none of whom were members of a protected class.

Plaintiff filed charges of unlawful discrimination with the Kansas Human Rights Commission and the Kansas Equal Opportunity Commission on December 21, 1994. He received notice of his right to sue and presently seeks relief pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*

## II. SUMMARY JUDGMENT STANDARD

A court shall render summary judgment upon a showing that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). The rule provides that "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). The substantive law identifies which facts are material. *Id.* at 248, 106 S.Ct. at 2510. A dispute over a material fact is genuine when the evidence is such that a reasonable jury could find for the nonmovant. *Id.* "Only disputes over facts that might properly affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*

The movant has the initial burden of showing the absence of a genuine issue of material fact. *Shapolia v. Los Alamos Nat'l Lab.,* 992 F.2d 1033, 1036 (10th Cir.1993). The movant may discharge its burden "by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1985). The movant need not negate the nonmovant's claim. *Id.* at 323, 106 S.Ct. at 2553.

Once the movant makes a properly supported motion, the nonmovant must do more than merely show there is some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1985). The nonmovant must go beyond the pleadings and, by affidavits or depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial. *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553 (interpreting Fed. R.Civ.P. 56(e)). Rule 56(c) requires the court to enter summary judgment against a nonmovant who fails to make a showing sufficient to establish the existence of an essential element to that party's case, and on which that party will bear the burden of proof. *Id.* at 322, 106 S.Ct. at 2552. Such a complete failure of proof on an essential element of the

nonmovant's case renders all other facts immaterial. *Id.* at 323, 106 S.Ct. at 2552.

A court must view the facts in the light most favorable to the nonmovant and allow the nonmovant the benefit of all reasonable inferences to be drawn from the evidence. *See, e.g., United States v. O'Block,* 788 F.2d 1433, 1435 (10th Cir.1986) (stating that "[t]he court must consider factual inferences tending to show triable issues in the light most favorable to the existence of those issues"). The court's function is not to weigh the evidence, but merely to determine whether there is sufficient evidence favoring the nonmovant for a finder of fact to return a verdict in that party's favor. *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2510. Essentially, the court performs the threshold inquiry of determining whether a trial is necessary. *Id.* at 250, 106 S.Ct. at 2511.

## III. DISCUSSION

■ Defendant seeks summary judgment on plaintiff's inadequate job training and job disqualification claims. According to defendant, these claims involve disputes over the meaning of certain provisions of the Collective Bargaining Agreement. Therefore, defendant concludes, plaintiff's claims are preempted by the Minor Dispute Provisions of the Railway Labor Act and the court lacks subject matter jurisdiction to hear the claims.

■ Disputes growing out of the interpretation or application of agreements between railroads and their employees are governed by the Railway Labor Act, 45 U.S.C. § 151 *et seq.* ("RLA"). Congress enacted the RLA "to promote stability in labor-management relations by providing effective and efficient remedies for resolution of railroad employee disputes concerning 'rates of pay, rules, or work conditions arising under collective bargaining agreements.'" *McAlester v. United Air Lines, Inc.,* 851 F.2d 1249, 1252 (10th Cir.1988) (citing 45 U.S.C. § 153). When the resolution of a dispute depends upon the interpretation or application of the collective bargaining agreement, it is termed a "minor dispute." *Hawaiian Airlines v. Norris,* 512 U.S. 246, 114 S.Ct. 2239, 129 L.Ed.2d 203 (1994). Minor disputes involve "the meaning or proper application of a particular provision with reference to a specific situation...."

*Consolidated Rail Corp. v. Railway Labor Executive Assoc.,* 491 U.S. 299, 303, 109 S.Ct. 2477, 2480, 105 L.Ed.2d 250 (1989). "Congress considered it essential to keep ... 'minor' disputes out of the courts." *Zimmerman v. ATSF Ry. Co.,* 888 F.2d 660, 661 (10th Cir.1989) (citing *Union Pac. R .R. v. Sheehan,* 439 U.S. 89, 99 S.Ct. 399, 58 L.Ed.2d 354 (1978).

■ The court is not convinced, however, that plaintiff's claims qualify as a "minor dispute." "The distinguishing feature of [a 'minor' dispute] is that the dispute may be conclusively resolved by interpreting the existing [collective bargaining] agreement." *Davies v. American Airlines, Inc.,* 971 F.2d 463, 465 (quoting *Consolidated Rail Corp.,* 491 U.S. 299, 305, 109 S.Ct. 2477, 2481, 105 L.Ed.2d 250 (1989)). Resolution of the present dispute requires more than interpretation of the Collective Bargaining Agreement. It also concerns more than 'rates of pay, rules, or work conditions" arising under the Collective Bargaining Agreement. More importantly, "the RLA does not preempt court jurisdiction over racial discrimination claims asserted under Title VII of the Civil Rights Act of 1964." *McAlester,* 851 F.2d at 1255 (citing *Norman v. Missouri Pac. R.R.,* 414 F.2d 73 (8th Cir.1969)).

Accordingly, the court finds that plaintiff is not barred from bringing his Title VII claims by the Railway Labor Act. Plaintiff's claim of racial discrimination was brought under the statutory authority of Title VII, not the provisions of the Collective Bargaining Agreement. Furthermore, defendant has offered no evidence that the collective bargaining agreement requires employees to submit individual statutory claims to arbitration. Nor does defendant provide any authority precluding plaintiff from bringing this statutory discrimination claim merely because plaintiff submitted his complaint as a grievance through the Collective Bargaining Agreement between his union and defendant.

**IT IS THEREFORE BY THE COURT ORDERED** that defendant's Motion for Partial Summary Judgment (Doc. 25) is denied.