Andrew STOKES, Plaintiff,

v.

**NORFOLK SOUTHERN RAILWAY COMPANY, Norfolk Southern Corporation, and Robert Williamson, Defendants.**

No. 1:99CV0518RM.

United States District Court,
N.D. Indiana,
South Bend Division.

May 17, 2000.

Christopher C. Myers, Christopher Myers and Associates, Fort Wayne, Donald M. Flack, Robert W. Schmeider, Pratt and Tobin, East Alton, IL, for Andrew Stokes, plaintiffs.

Timothy E Kapshandy, James S Whitehead, Sidley and Austin, Chicago, IL, for Norfolk and Southern Railway Company, a Virginia Corporation, Norfolk Southern Corp, a Virginia Corporation, Robert Williamson, Individually and in his capacity as Track Supervisor for Norfolk Southern Railway Company, defendants.

## MEMORANDUM AND ORDER

MILLER, District Judge.

Andrew Stokes filed a three-count complaint against his employer, Norfolk Southern Railway Company, its parent corporation Norfolk Southern Corporation, and one of his supervisors, Robert Williamson. Mr. Stokes claims he was discriminated against because of his race when his employer laid him off on February 14, 1997, and then refused his repeated requests to "bump" into foreman positions up to and including January 4, 1998. The defendants filed a motion to dismiss, or in the alternative, a motion for judgment on the pleadings pursuant to Rules 12(b)(1) and (6), and Rule 12(c) of the Federal Rules of Civil Procedure, contending that Mr. Stokes's civil rights claims pursuant to 42 U.S.C. § 2000e *et seq.* and 42 U.S.C. § 1981 are preempted by the Railway La-

bor Act, 45 U.S.C. § 151 *et seq.;* that Mr. Stokes failed to meet the administrative prerequisites for filing a Title VII claim; that Mr. Stokes's § 1981 claim should be dismissed because he didn't comply with the applicable statute of limitations or because the claim is legally inadequate; and that his state law claim for intentional infliction of emotional distress is preempted by the Railway Labor Act or is inadequate as a matter of law.

Mr. Stokes moved to amend his complaint at the same time he responded to the dismissal motion. This motion created a procedural knot that must be loosened before the court proceeds. Under Federal Rule of Civil Procedure 15(a), Mr. Stokes had the right to amend his complaint "once as a matter of course" before a responsive pleading was filed, and since a dismissal motion is not a responsive pleading, *see* Fed.R.Civ.P. 7(a), he had that right when he filed his first amended complaint. The amended complaint superseded the original complaint, to which the dismissal motion had been directed, making the dismissal motion moot—a point not easily remembered in light of the contemporaneous filing of a response to the dismissal motion.

Norfolk Southern's reaction deepened the confusion. Norfolk Southern filed a reply in support of its dismissal motion (a motion already moot) and, perhaps since Mr. Stokes sought the court's permission to do what the rules entitled him to do, Norfolk Southern also opposed the filing of the amended complaint, arguing that the amendment would be futile in light of the arguments raised in the dismissal motion. Futility is, of course, a pertinent consideration when evaluating whether justice requires allowing a requested amendment to a pleading, *General Electric Capital Corp. v. Lease Resolution Corp.,* 128 F.3d 1074 (7th Cir.1997), but it is entirely beside the point when amendment is a matter of right rather than dependent on an exercise of judicial discretion.

The court made its own contribution to the tangle by allowing matters to proceed through reply and to rest for several weeks thereafter without pointing these things out. Now, a quarter of the time allowed for discovery has passed, as has the time within which amendments to the pleadings were to be allowed. Accordingly, the court takes the following course with intent to unravel: a comparison of the two complaints (original and amended) indicates some clarification, but nothing that was not addressed in the briefing on the motion to dismiss the original complaint. The court does not ordinarily infer such things, but under these odd circumstances, the court will assume that Norfolk Southern directs the motion to dismiss the original complaint at the amended complaint, as well. Rather than make the parties adopt and renew their arguments, which would appear to do nothing but delay ruling, the court deems the amended complaint filed March 7, 2000, with the dismissal motion immediately renewed with respect to the amended complaint; the court grants the motion to amend (which it has no power to deny) and denies the objection to that motion as moot.

The procedural knot having been undone as best the court can, the court turns to the issues presented in the dismissal motion. The amended complaint drops count III, so the court does not address the arguments aimed solely at the superseded count.

Because this case is before the court on a motion to dismiss, the court assumes the truth of Mr. Stokes's allegations and bases its recital of the facts on those contained in his complaint. *See Antonelli v. Sheahan,* 81 F.3d 1422, 1427 (7th Cir.1996).

Andrew Stokes worked for Norfolk Southern from May 20, 1977. Contrary to its usual and customary practice of laying off its employees according to seniority, Norfolk Southern laid off Mr. Stokes from his machine operator position on February 14, 1997, while allowing a less senior white employee to retain his position as machine operator. After his layoff, Mr. Stokes notified his supervisor defendant Robert Williamson (who is said to have told other employees that "That nigger's [Mr. Stokes] not smart enough to be a surfacing gang foreman" and "I don't know if that dumb a—nigger is smart enough to swing a hammer") that he wanted to exercise his "bumping rights" to a position as foreman of a surfacing gang. Again contrary to its usual and customary practice, Norfolk Southern refused his requested "bump" and allowed a white employee with less seniority to retain that position.

Norfolk Southern continued to refuse Mr. Stokes's repeated requests to "bump" into foreman positions until January 4, 1998, when the position of extra gang foreman became available. Although Norfolk Southern usually advertises such an open position and usually allows the employee with the most seniority to fill the opening, Norfolk Southern did not advertise the position or make it available based on seniority. Mr. Stokes had been furloughed as an extra gang foreman, was qualified to perform the job based on his seniority, and would have been eligible for the job had it been advertised. The job was awarded to a white employee.

### Railway Labor Act

Norfolk Southern initially seeks to dismiss Mr. Stokes's Title VII and § 1981 claims on the grounds that they are precluded[1] by the Railway Labor Act and must be resolved in arbitration because (1) the collective bargaining agreement with the Brotherhood of Maintenance of Way Employees is the only source of Mr. Stokes's seniority rights and (2) resolution of his claims depends on an interpretation of the CBA. Mr. Stokes challenges Norfolk

---

1. The RLA may preempt a state law, but it precludes the application of, rather than preempting, other federal law. *See Atchison, Topeka & Santa Fe Railway Co. v. Buell,* 480 U.S. 557, 562, 107 S.Ct. 1410, 94 L.Ed.2d 563 (1987). Courts often describe preclusion as preemption.

Southern's interpretation and application of the law and maintains the RLA doesn't preempt claims for unlawful discrimination. He argues that because his right to be free from unlawful discrimination derives from statute, it can't be classified as either a "minor" or a "major" dispute; instead, the right to work in a discrimination-free workplace is an independent right that is protected separately and distinctly from the contractual rights of the CBA. Both parties rely on *Hawaiian Airlines, Inc. v. Norris,* 512 U.S. 246, 114 S.Ct. 2239, 129 L.Ed.2d 203 (1994). The court believes *Hawaiian Airlines* supports Mr. Stokes's claims.

■ Rule 12(b)(1) provides for dismissal of claims over which the federal court lacks subject matter jurisdiction. Jurisdiction is the "power to decide" and must be conferred upon the federal court. *In re Chicago, Rock Island & Pacific R.R. Co.,* 794 F.2d 1182, 1188 (7th Cir.1986). In reviewing a 12(b)(1) motion to dismiss, the court may properly look beyond the jurisdictional allegations of the complaint to determine whether subject matter jurisdiction exists. *See United Transp. Union v. Gateway Western Ry. Co.,* 78 F.3d 1208, 1210 (7th Cir.1996). The plaintiff bears the burden of establishing that the jurisdictional requirements have been met and when a party moves for dismissal pursuant to Rule 12(b)(1), the non-moving party must support its allegations with competent proof of jurisdictional facts. *See Commodity Trend Service, Inc. v. Commodity Futures Trading Comm'n,* 149 F.3d 679, 685 (7th Cir.1998).

■ The RLA provides a "mandatory arbitral mechanism" for the resolving "minor disputes"—those that "involve controversies over the meaning of an existing collective bargaining agreement." *Monroe v. Missouri Pacific Railroad Co.,* 115 F.3d 514, 516 (7th Cir.1997) (quoting *Hawaiian Airlines, Inc. v. Norris,* 512 U.S. 246, 252, 114 S.Ct. 2239, 129 L.Ed.2d 203 (1994) (where a dispute between an employee and a carrier is a minor one within the mean-

ing of RLA, the adjustment board established by the employer and unions retains exclusive jurisdiction over the dispute and a federal district court lacks jurisdiction to adjudicate any substantive aspect of the controversy) (citing 45 U.S.C. § 184; *Atchison, Topeka and Santa Fe Ry. Co. v. Buell,* 480 U.S. 557, 563, 107 S.Ct. 1410, 94 L.Ed.2d 563 (1987); *Consolidated Rail Corp. v. Railway Labor Executives' Ass'n,* 491 U.S. 299, 302, 109 S.Ct. 2477, 105 L.Ed.2d 250 (1989))); *see also* 45 U.S.C. § 153 First (I) ("Minor" disputes are those that "grow[ ] out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions."). The RLA doesn't preclude claims under a separate federal remedial statute when the claimant is enforcing substantive rights that are "independent of" the CBA. *See Hawaiian Airlines,* 512 U.S. at 256, 265, 114 S.Ct. 2239 ("Obviously, to say that a minor dispute can be 'conclusively resolved' by interpreting the collective bargaining agreement is another way of saying that the dispute does not involve rights that exist independent of the collective bargaining agreement."); *Westbrook v. Sky Chefs. Inc.,* 35 F.3d 316, 318 (7th Cir.1994). A claim is not precluded if no interpretation of or substantive reference to the CBA is necessary, even if the claim and a potential grievance under the CBA involve the same factual inquiry. *See Hawaiian Airlines,* 512 U.S. at 261–262, 114 S.Ct. 2239 (the existence of a potential CBA-based remedy does not deprive an employee of independent remedies otherwise available) (citing *Lingle v. Norge Division of Magic Chef. Inc.,* 486 U.S. 399, 408–410, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988)). When the claims require purely factual inquiry into the employer's retaliatory motivations and do not require interpretation of the relevant CBA, the RLA does not preclude the remedies afforded by other federal statutes. *See Hawaiian Airlines,* 512 U.S. at 266, 114 S.Ct. 2239; *Lingle,* 486 U.S. at 407, 108 S.Ct. 1877. But the RLA precludes a

cause of action whose claims are inextricably intertwined with the CBA. *See Fry v. Airline Pilots Ass'n,* 88 F.3d 831, 836 (10th Cir.1996) (preemption of minor disputes under RLA extends to any suit that is inextricably intertwined with consideration of the terms of the labor contract).

█ If the RLA governs a CBA, which the parties appear to agree is so here (despite Mr. Stokes's description of the case as one involving Norfolk Southern's "usual and customary practice"), and the CBA must be interpreted to resolve a claim, the claim is a minor dispute subject to the RLA, even if it is premised on federal law other than the RLA itself. *See Monroe v. Missouri Pacific Railroad Co.,* 115 F.3d at 516–517; *Bielicke v. Terminal R.R. Ass'n,* 30 F.3d 877, 878 (7th Cir.1994). Norfolk Southern's argument that this court lacks jurisdiction over Mr. Stokes's claims depends on a finding that his claims under Title VII and § 1981 involve minor disputes; Norfolk Southern must identify some aspect of the CBA that relates to Mr. Stokes's claims.

According to Norfolk Southern, Mr. Stokes's claims involve disputes over the meaning and application of the CBA's seniority provisions and Norfolk Southern's standard operating practices. Norfolk Southern cites *Caldwell v. Norfolk Southern Corp.,* No. 3:96CV443–P, 1998 U.S. Dist. LEXIS 6171 (W.D.N.C. Mar. 3, 1998), a case with facts similar to this case, in support of its argument that the RLA precludes federal employment discrimination claims when they require the interpretation of a CBA. *Caldwell v. Norfolk Southern Corp.,* though, required interpretation of conflicting CBA provisions about who could compete for a particular job and how it would be filled.

The other cases that Norfolk Southern cites for the proposition that federal courts repeatedly hold that the RLA precludes federal discrimination claims when they would require an interpretation of a CBA are cases in which the provisions of the CBA were disputed. *See, e.g., Cain v.*

*Union Pacific R.R.,* No. 97 C 1443, 1999 U.S. Dist. LEXIS 20174, *7–*8 (N.D.Ill. Dec. 29, 1999) (ADA claim entailed dispute over meaning of "unable to hold" language of the CBA); *Eckles v. Consolidated Rail Corp.,* 890 F.Supp. 1391, 1414–1415 (S.D.Ind.1995) (ADA claim based on right of disabled worker created under paragraph 2–H–1 of CBA); *Hogan v. Northwest Airlines, Inc.,* 880 F.Supp. 685, 691 (D.Minn.1995) (ADA claim depended on interpretation of whether plaintiff conduct constituted an application for a position pursuant to the terms of the CBA).

█ Mr. Stokes's claims are not grounded in a dispute over the meaning of the seniority provisions of the CBA—he claims he was qualified for positions and had the required seniority to bump into those positions and was denied because of racial animus—but instead pertain to Norfolk Southern's motives in laying off Mr. Stokes and in denying his requests to bump. Although Mr. Stokes's claims involve seniority rights that are determined by the CBA, that doesn't mean his claims involve application or interpretation of a CBA. *See Monroe v. Missouri Pacific Railroad Co.,* 115 F.3d at 518 (citing *Livadas v. Bradshaw,* 512 U.S. 107, 124–26, 114 S.Ct. 2068, 129 L.Ed.2d 93 (1994) ("[T]he mere need to 'look to' the collective-bargaining agreement for damage computation is no reason to hold the state law claim defeated ...."); *Lingle,* 486 U.S. at 413 n. 12, 108 S.Ct. 1877). The major/minor dispute classification is irrelevant because Mr. Stokes's claim is neither: his claims are independent of the CBA and derive from federal statutes. In assessing whether Norfolk Southern violated Mr. Stokes's rights under Title VII and § 1981, the court will not address an interpretation or application of seniority rights under the CBA, but instead will decide, factually, Norfolk Southern's motives in denying Mr. Stokes his seniority and bumping rights.

Whether Norfolk Southern laid off Mr. Stokes or denied Mr. Stokes his bumping

rights because of his race in violation of his right to be free from race discrimination under the Title VII and § 1981 are purely factual questions whose resolution only requires inquiry into Norfolk Southern's motive. Although the RLA denies district courts of subject matter jurisdiction over claims involving application of and construction of collective bargaining agreements, it doesn't provide the exclusive forum for determination of federal statutory rights to be free from discriminatory practices. *See, e.g., Adams v. American Airlines, Inc.,* No. 98–5118, 2000 WL 14399 (10th Cir. Jan.10, 2000) (Title VII claim not precluded); *Saridakis v. United Airlines,* 166 F.3d 1272 (9th Cir.1999) (ADA claim not precluded); *Deneen v. Northwest Airlines. Inc.,* 132 F.3d 431 (8th Cir.1998) (Pregnancy Discrimination Act claim not precluded); *Benson v. Northwest Airlines, Inc.,* 62 F.3d 1108 (8th Cir.1995) (ADA claim not precluded); *Felt v. Atchison, Topeka & Santa Fe Ry.,* 60 F.3d 1416 (9th Cir.1995) (Title VII claim not precluded); *Adams v. New Jersey Transit Rail Operations,* NO. 97 CIV. 430(LAP), 2000 WL 224107 (S.D.N.Y. Feb.28, 2000) (Title VII claim not precluded); *Blakely v. USAirways, Inc.,* 23 F.Supp.2d 560 (W.D.Pa. 1998) (ADA claim not precluded); *McLain v. Consolidated Rail Corp.,* No. 96–CV–427–WDS, 1997 WL 151847 (S.D.Ill. Mar.3, 1997) (ADA claim not precluded); *Mosqueda v. Burlington Northern Santa Fe Ry.,* 981 F.Supp. 1403 (D.Kan.1997) (Title VII claim not precluded); *McElveen v. CSX Transportation, Inc.,* No. 4:95–1632–22JI, 1996 WL 481105 (D.S.C. Aug.21, 1996) (§ 1981 claim not precluded); *Mumford v. CSX Transp.,* 878 F.Supp. 827 (M.D.N.C. 1994), (Title VII and § 1981 claims not precluded); *Tarrant v. United Parcel Service, Inc.,* No. 93 C 5660, 1994 WL 30552 (N.D.Ill. Feb.03, 1994) (Title VII claim not precluded); *but see Cain v. Union Pacific R.R.,* No. 97 C 1443, 1999 U.S. Dist. LEXIS 20174 (N.D.Ill.Dec. 29, 1999) (ADA claim precluded); *Caldwell v. Norfolk Southern Corp.,* No. 3:96CV443–P, 1998 U.S. Dist. LEXIS 6171 (W.D.N.C. Mar. 3, 1998) (Title VII claim precluded); *Eckles v. Consolidated Rail Corp.,* 890 F.Supp. 1391, 1414–1415 (S.D.Ind.1995) (ADA claim precluded); *Hogan v. Northwest Airlines, Inc.,* 880 F.Supp. 685, 691 (D.Minn.1995) (ADA claim precluded). Accordingly, the court finds that subject matter jurisdiction over Mr. Stokes's claims is proper.

### *Failure to Satisfy Administrative Prerequisites*

Failure to exhaust administrative remedies "is not a jurisdictional flaw," *Gibson v. West,* 201 F.3d 990, 993 (7th Cir.2000), so the court reviews Norfolk Southern's arguments on this point under the standard of Rule 12(b)(6) of the Federal Rules of Civil Procedure: the court takes as true the well-pleaded factual allegations of the nonmovant and draws all reasonable inferences in its favor. *See Ogden Martin Sys. of Indianapolis, Inc. v. Whiting Corp.,* 179 F.3d 523, 526 (7th Cir.1999). The court is limited to the allegations contained in the pleadings themselves, but documents incorporated by reference into the pleadings and documents attached to the pleadings as exhibits are considered part of the pleadings for all purposes. *See* Fed. R.Civ. P. 10(c). Dismissal under Fed. R.Civ.P. 12(b)(6) is proper only if it appears beyond doubt that the claimant can prove no set of facts in support of its claim which would entitle it to relief. *Lachmund v. ADM Investor Serv., Inc.,* 191 F.3d 777, 781 (7th Cir.1999) (citing *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). Rule 8(a)(2) of the Federal Rules of Civil Procedure requires only that a claimant plead a "short and plain statement of the claim showing that the pleader is entitled to relief" and does " 'not require a claimant to set out in detail the facts upon which he bases his claim.' " *Payton v. Rush–Presbyterian–St. Luke's Medical Ctr.,* 184 F.3d 623, 626–627 (7th Cir.1999) (citing *Conley v. Gibson,* 355 U.S. at 47, 78 S.Ct. 99).

Rule 12(c) motions are much like Rule 12(b) motions to dismiss for failure to state a claim. Norfolk Southern moves under

Rule 12(c), but such a motion is premature, since no answer has been filed. *See McMahan v. Cornelius,* 756 F.Supp. 1156, 1159 (S.D.Ind.1991); 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure: Civil* § 1367 (2d ed.1990). Accordingly, the court proceeds under Rule 12(b)(6).

Norfolk Southern first argues that Mr. Stokes's layoff and both of his bumping claims must be dismissed under Title VII because they were not raised in timely E.E.O.C. charges of discrimination. Mr. Stokes responds that the discovery rule and continuing violation doctrine apply in this case.

■ A complaining party in a deferral state has 300 days from the allegedly discriminatory act to file a Title VII charge. *See* 42 U.S.C. § 2000–e5(e); *Lever v. Northwestern University,* 979 F.2d 552, 553 (7th Cir.1992). Standard principles of limitations law, including the discovery rule, excuse the Title VII claimant from having to file his claim before it is feasible for him to do so. *See Galloway v. General Motors Service Parts Operations,* 78 F.3d 1164, 1166 (7th Cir.1996) (citing *Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 393, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982)). Under the discovery rule, a claim accrues when the plaintiff knew or should have known of his injury, not when the plaintiff realizes that he might have a legal claim arising out of the injury. *See Sellars v. Perry,* 80 F.3d 243, 245 (7th Cir.1996) (citing *Cathedral of Joy Baptist Church v. Village of Hazel Crest,* 22 F.3d 713, 717 (7th Cir.1994)).

■ The discovery rule doesn't help Mr. Stokes's claim about his February 1997 layoff and bumping rights. Mr. Stokes says he had no reason to know of or suspect Norfolk Southern's discriminatory motives when he was first denied a foreman position in February 1997. Under the discovery rule, the claim accrues when victim knows of his injury and time begins to run even though victim does not know that injury is actionable. The act giving rise to Mr. Stokes's injury was his February 11, 1997 layoff and denial of bumping rights, about which he plainly knew when it happened, and that is when his action accrued.

■ Mr. Stokes next argues that the continuing violation doctrine should apply. When a pattern or practice of discrimination continues from outside the limitations period into the statutory limitations period, all discriminatory acts committed as part of this pattern may be considered timely. *See Hardin v. S.C. Johnson & Son, Inc.* 167 F.3d 340, 344 (7th Cir.1999). This doctrine requires the plaintiff to identify at least one viable charge within the appropriate limitation period. *See E.E.O.C. v. Harvey L. Walner & Associates,* 91 F.3d 963, 969 (7th Cir.1996). "This doctrine is designed to 'accommodate plaintiffs who can show that there has been a pattern or policy of discrimination continuing from outside the limitations period into the statutory limitations period, so that all discriminatory acts committed as part of this pattern or policy can be considered ... timely.'" *Id.* (quoting Ramona L. Paetzold & Anne M. O'Leary–Kelly, *Continuing Violations and Hostile Environment Sexual Harassment: When is Enough, Enough?,* 31 AM. BUS. L.J. 365 (1994)).

■ The continuing violation doctrine applies "when it would be unreasonable to expect the plaintiff to perceive offensive conduct as Title VII harassment before the limitations period runs, or the earlier discrimination may only be recognized as actionable in light of 'events that occurred later, within the period of the statute of limitations'." *Id.* (quoting *Galloway,* 78 F.3d at 1167). In a case where the employer covertly follows a practice of discrimination over a period of time and the plaintiff can only realize that he is a victim of discrimination after a series of discrete acts has occurred, the limitations period begins to run when the plaintiff gains such insight. *See Moskowitz v. Trustees of Purdue University,* 5 F.3d 279, 281–282 (7th Cir.1993). But if the plaintiff knew,

or "with the exercise of reasonable diligence would have known after each act that it was discriminatory and had harmed" him, he must sue over that act within the relevant statute of limitations. *Id.* at 282; *see also Jones v. Merchants Nat. Bank & Trust Co. of Indianapolis,* 42 F.3d 1054, 1058 (7th Cir.1994).

Mr. Stokes argues that he had no knowledge or reason even to suspect that he was the victim of discrimination until he recognized the pattern of Norfolk Southern's denials of his requests to fill foreman positions. He says that once he suspected discrimination, he filed an E.E.O.C. charge, and the ensuing investigation uncovered direct evidence that confirmed his suspicions. While Norfolk Southern's retention of the less senior white employee and refusal to permit Mr. Stokes to bump into the foreman position in February 1997 might be regarded as events that may have alerted him to a possible claim, the court does not find it unreasonable as a matter of law that he would not attribute Norfolk Southern's actions to discrimination at first. Without some clear statement in the complaint, the court cannot find, on a motion under Rule 12(b), that Mr. Stokes knew or should have known that the acts of which he complains were discriminatory at the time they occurred. Mr. Stokes's allegations may give rise to a continuing violation.

Norfolk Southern next argues that Mr. Stokes's claim about the extra gang foreman position that he was allegedly denied on January 4, 1998 fails because his January 21, 1998 E.E.O.C. charge doesn't refer to Norfolk Southern's refusal to allow him to bump into the position. Mr. Stokes responds that the event is explicitly stated in the charge because the charge alleges a violation that has continued from February 1997 through the date of the filing of the charge; the charge alleges a continuing action of preventing him from filing foreman positions; and the claim based on the January 4, 1998 actions reasonably could have developed from the E.E.O.C.'s investigation.

While a plaintiff generally may not raise in the district court a claim not included in an E.E.O.C. charge, *see Chambers v. American Trans Air, Inc.,* 17 F.3d 998, 1003 (7th Cir.1994), a plaintiff may pursue claims not explicitly stated in an E.E.O.C. charge where they are like or reasonably related to claims raised in the charge and reasonably could have developed from the E.E.O.C.'s investigation, *see Cheek v. Western & S. Life Ins. Co.,* 31 F.3d 497, 501 (7th Cir.1994). Claims are alike or reasonably related if there is a factual relationship between them. *See id.* Because most E.E.O.C. charges are completed by laypersons rather than by lawyers, "the test for determining whether an E.E.O.C. charge encompasses the claims in a complaint ... grants the Title VII plaintiff significant leeway." *Id.* at 500.

Mr. Stokes's charge complains that from February 11, 1997 through January 21, 1998 Track Supervisor R.N. Williamson denied him the right to exercise his seniority and qualification status to bump into foreman positions because of his race and that white employees were being treated more favorably. A claim regarding the January 4, 1998 incident reasonably could have developed from any E.E.O.C. investigation of the charge before it. Mr. Stokes complied with the administrative prerequisites to filing his complaint.

Mr. Stokes also complains of hostile environment harassment. Norfolk Southern seeks this claim's dismissal because Mr. Stokes hasn't alleged facts sufficient to establish a claim. The court agrees with Norfolk Southern. For a hostile environment harassment claim to be actionable, the harassment must be "sufficiently severe or pervasive so as to alter the conditions of the victim's employment and to create an abusive working atmosphere." *McKenzie v. Illinois Dep't of Trans.,* 92 F.3d 473, 479 (7th Cir.1996) (citing *Meritor Savings Bank, FSB v. Vin-*

*son,* 477 U.S. 57, 67, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986)). Mr. Stokes does not defend the attack on the legal adequacy of his claim, and the court finds, as a matter of law, that his factual allegations, even if accepted as true, are insufficient to establish that any harassment he suffered unreasonably interfered with his working environment, and dismisses the complaint as far as it alleges a hostile environment claim under either Title VII or § 1981.

### Statute of Limitations— Section 1981 Claim

Mr. Stokes also brings his race discrimination claims against Mr. Williamson, individually and as a Norfolk Southern Track Supervisor, for his refusals to let Mr. Stokes bump into foreman positions. Norfolk Southern argues that the February 14, 1997 denial of the right to bump is barred by the two-year statute of limitations period.

In Indiana, "[s]ection 1981 claims have a two-year statute of limitations period, calculated from the date of the filing of the complaint." *Vore v. Indiana Bell Tel. Co.,* 32 F.3d 1161, 1163 (7th Cir.1994) (citing *Goodman v. Lukens Steel Co.,* 482 U.S. 656, 107 S.Ct. 2617, 96 L.Ed.2d 572 (1987); Ind.Code Ann. § 34–1–2–2).[2] Mr. Stokes filed his complaint on December 17, 1999, and acknowledges that injuries that occurred more than two years prior to that date are time-barred, but argues that because he didn't know and had no reason to know that he had been discriminated against until the January 4, 1998 incident, the § 1981 claims based on the February 1997 acts were timely filed. Mr. Stokes cites *Webb v. Indiana Nat'l Bank,* 931 F.2d 434, 436 (7th Cir.1991), which, at that point of the case, discusses the doctrine of equitable tolling.

The doctrine of equitable tolling "permits a plaintiff to avoid the bar of the statute of limitations if despite all due diligence he is unable to obtain vital information bearing on the existence of his claim." *Cada v. Baxter Healthcare Corp.,* 920 F.2d 446, 451 (7th Cir.1990); *see also Webb,* 931 F.2d at 436 (if the victim cannot by reasonable diligence obtain the information necessary to determine whether he was wrongfully injured and therefore have a claim, the running of the statute of limitations will be suspended until he can obtain the information). Mr. Stokes knew he was injured in February 1997 when he was laid off and when Mr. Williamson denied him bumping rights. To avail himself of the doctrine of equitable tolling, Mr. Stokes must show his exercise of due diligence and nothing in the record indicates that Mr. Stokes made any effort, much less exercised due diligence, in determining whether the injury was wrongful. Accordingly, § 1981 claims for injuries occurring prior to December 17, 1997 are time-barred.

### Conclusion

Accordingly, the court

(1) GRANTS Mr. Stokes's motion [Docket No. 16] for leave to amend the pleadings, OVERRULES Norfolk Southern's opposition to that motion, and DEEMS the amended complaint FILED as of March 7, 2000 [Docket No. 16];

(2) GRANTS IN PART and DENIES IN PART Norfolk Southern's motion to dismiss and motion for judgment on the pleadings [Docket No. 12]; and

(3) GRANTS Mr. Stokes's motion to supplement memorandum in opposition to defendant's motion to dismiss and plaintiff's motion to file first amended complaint [Docket No. 18].

SO ORDERED.

---

**2.** Repealed and reenacted in 1998 as Ind. Code Ann. § 34–11–2–4.